100 373
64a 297

## PARKS *et al.* v. THE HARTFORD INSURANCE COMPANY, *Appellant.*

1. **Homestead: MORTGAGE.** No stranger to the homestead right can successfully impeach a transaction upon the ground that it is in effect affixing a mortgage to the homestead, contrary to the provisions of the constitution of Texas.

2. **Mortgage: INSURABLE INTEREST OF MORTGAGEE.** A mortgagee has an insurable interest in the property covered by the mortgage lien, at least, to the limit of the indebtedness secured, as has likewise a vendor to the extent of his lien for unpaid purchase money.

3. **Insurance:** TERMS OF POLICY: THREE-FOURTHS VALUE CLAUSE. The recital in a written portion of an insurance policy that it is "subject to the three-fourths value clause," without any enlargement or explanation of the recital elsewhere in the instrument, will not, in an action on the policy, give it the force of an agreement that in the event of total loss the property shall not be valued at a sum greater than three-fourths of the actual value in ascertaining the amount to be paid for total insurance.

4. ———: ———. A clause in an insurance policy providing that the assured shall not be entitled "to recover of this company any greater proportion of the loss or damage than the amount hereby insured bears to the whole sum insured on said property, * * * without reference to the solvency or the liability of the other insurers" does not include contracts of supposed insurance which, for any sufficient cause fail ever to become operative.

*Appeal from. St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

AFFIRMED.

THIS is an action upon a policy of fire insurance issued May 12, 1884, by defendant, at Texarkana, Texas, to M. V. Flippin, insuring the latter in the sum of three thousand dollars for one year, against loss by fire on a three-story building occupied by him there. The policy permitted seventeen thousand, five hundred dollars total concurrent insurance "subject to the three-fourths value clause," and made the "loss, if any, payable to Meyer & Aronson, or order, of St. Louis, as their interest may appear." It will not be necessary to state the pleadings at length.

The facts disclosed at the trial are mostly undisputed. Those which have a material bearing on the errors assigned on the present appeal will be noted.

When the policy sued on was issued Flippin occupied part of the insured building as a place of business, but his home was elsewhere in the town. He was the head of a family and a citizen of Texas. Before he took the policy he conveyed the building and lot on which it stood to Meyer & Aronson for twenty-five

thousand dollars, due them by him, and on the same
day Meyer & Aronson reconveyed the property to
Flippin for the same recited consideration, evidenced
by promissory notes of the latter which were made a
vendor's lien on the property by recitals in them and
in the deed. When Meyer & Aronson received the
policy now in suit, they indorsed and delivered it for
value, along with Flippin's notes, to the Mechanics'
Bank to whose rights plaintiffs are successors.

Some three months before the loss which led to this
litigation, Flippin with his family moved into the south
half of the insured building. He occupied it as his
homestead until the fire, February 21, 1885. Shortly
before that date defendant's agent at Texarkana took
steps toward terminating the risk on its part (as the
policy permitted), but before that object had been
accomplished the fire intervened. It is not claimed by
defendant that the policy had then ceased to be oper-
ative.

After these steps to cancel it had been initiated,
defendant's agent told Flippin that the insurances
(including this one) had all been canceled. Thereupon
the latter applied to the East Texas Fire Insurance
Company for five thousand dollars' insurance on the
property in question, representing it as uninsured, and
received from that company a policy for twenty-five
hundred dollars only. This supposed insurance has
been denied by the latter company and payment refused
on the ground of that alleged misrepresentation. The
cause was tried by Judge THAYER, who found for plain-
tiffs in the sum of $2,522.40 predicated on a valuation
of the destroyed property at eight thousand dollars.

It will not be essential to set forth the instructions
in full in view of the conclusions reached upon the
material points of the controversy. The controlling
facts are practically conceded.

The finding for less than the face of the policy was
based on a clause in it to the effect that "in no case

shall the claim be for a greater sum than the actual damage to or cash value of the property at the time of the fire, nor shall the assured be entitled to recover of this company any greater proportion of the loss or damage than the amount hereby insured bears to the whole sum insured on said property, whether such other insurance be by specific or by general or floating policies and without reference to the solvency or the liability of the other insurers." In estimating the total amount of concurrent insurance the trial court excluded the policy in the East Texas Fire Insurance Company already mentioned, which left the total contributing insurance twelve thousand, five hundred dollars. The laws of Texas were introduced in evidence at the trial.

One of the main objections to plaintiffs' right of recovery rests on the terms of the constitution of that state relating to homesteads, viz. :

" Sec. 50. The homestead of a family shall be, and is hereby, protected from forced sale for the payment of all debts, except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife, given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife given in such manner as may be prescribed by law. No mortgage, trust deed or other lien on the homestead shall ever be valid except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead, involving any condition of defeasance, shall be void.

" Sec. 51. The homestead, not in a town or city, shall consist of not more than two hundred acres of land,

which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village shall consist of lot or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

Defendant appealed from the finding and judgment against it, after the usual motions and exceptions. The errors alleged are discussed in the opinion.

*Noble & Orrick* for appellant

(1) Under the issues made by the pleadings, respondents were not entitled to recover, unless it appeared from the evidence that they had the insurable interest in the property covered by the policy stated in their petition. The notes for purchase money executed by Flippin, being the evidence of such insurable interest as set forth in the petition, are without consideration and void, and hence an insurable interest cannot be based upon them; these notes were, in effect, a mortgage on Flippin's homestead; under the constitution and laws of Texas such mortgage is illegal and void. (2) The respondents, having failed to establish an insurable interest through the notes, attempted to show, against the objection of appellant, that Flippin owed Meyer & Aronson twenty-five thousand dollars on general account, and that such indebtedness to Meyer & Aronson was evidence of an insurable interest in respondents Parks and others. This was error: (*a*) Because in showing this there would have been substantial variance between the pleadings and the proof, which is not permissible. (*b*) Because, even if permissible, there is no evidence in the record that Meyer

& Aronson assigned or transferred to respondents this account for twenty-five thousand dollars against Flippin; the notes only were transferred. (3) The transfer of deeds between Meyer & Aronson and Flippin on the —— day of ——, 1884, was a fraud on the homestead laws of Texas and was so intended by them. It follows that Meyer & Aronson, or their assigns, the respondents, cannot enforce the notes resulting from the fraud, or obtain any benefit from or proceeds of a policy of insurance, in aid of such notes. Constitution of Texas, art. 16, secs. 50 and 51; Gen. Stat. Texas, ch. 1, art. 2336, p. 341; Gen. Stat. Texas, p. 94; *Cameron v. Fay*, 55 Texas, 63; *Mills v. Menke*, 56 Texas, 534. (4) The respondents are not innocent holders, for value, of the notes. The notes contain a statement that they are given in payment for the homestead, and are a lien on the property. (5) The court below erred in disregarding the three-fourths value clause in the policy, and rendering judgment on the basis of the full value of the property destroyed. (6) The court below erred in excluding the amount covered by the policy of the East Texas Fire Insurance Company ($2,500), in determining the amount of total insurance, upon which the pro-rate to be paid by appellant was based. The total insurance at the date of the fire, including that in the East Texas Fire Insurance Company, was twelve thousand, five hundred dollars; excluding it, ten thousand dollars. Appellant's policy provides that in no case shall the claim be for a greater sum than the actual damage to or cash value of the property at the time of the fire, nor shall the assured be entitled to recover any greater proportion of the loss or damage than the amount hereby insured bears to the whole amount insured on said property, without reference to the solvency or liability of other insurers

*Cunningham & Eliot* and *E. B. Adams* for respondents.

The fact that the petition alleged an insurable interest in the property insured and that plaintiff fails to establish such interest does not prejudice his right to recover in the event it turns out that such interest is unnecessary. Aside from the averments of insurable interest in the property, the petition states facts which entitle them to recover. Meyer & Aronson were, by the terms of the policy, appointed to receive the proceeds, and were immediately entitled to the possession of the policy. That possession was rightful *prima facie* and without proof. *Franklin v. Ins. Co.*, 43 Mo. 495. The interest referred to in the words, "as their interest may appear," is an interest in the contract of insurance and not an interest in the property insured. *Bidwell v. Co.*, 40 Mo. 46; Wood on Fire Ins., sec. 285. This court will not enforce or regard the Texas law of homestead. Thompson on Homesteads and Exemptions, sec. 20. Being an exemption law, it can have no territorial force or effect. *Roche v. Ins. Co.*, 2 Bradwell's Rep. 360; *Mineral Point, etc., Co. v. Barron*, 83 Ill. 467; *Branser v. Ins. Co.*, 21 Wis. 506. The homestead exemption is a purely personal right, enforceable, if it exists, by those for whose benefit it exists. It cannot be asserted by any other person. Thompson on Homesteads and Exemptions, sec. 820, and cases cited. There is no evidence tending to show that plaintiffs ever had any knowledge or notice before defendant's answer was made that Flippin claimed the property as homestead; but the point is immaterial here because no ruling of the trial court was made upon it directly or indirectly. No evidence was offered tending to show that there was any "three-fourths value clause" in existence. Inspection of the policy shows that there is no such clause in that instrument. The policy in the Texas company was invalid and void. Insurance without liability of an insurer is no insurance at all. Wood on Fire Ins., secs. 372, 373, and cases cited.

BARCLAY, J.—I. Defendant asserts that the transaction (in which the notes held by plaintiffs were given) between Flippin and the firm of Meyer & Aronson amounted, in effect, to affixing a mortgage charge to the homestead of the former, and, as such, should be regarded as illegal and void under the constitution and laws of Texas.

It is enough on this point to say that, giving full force to the facts alleged by defendant, and assuming, for the moment, that effect may be given here to the Texas homestead laws, the transaction would be, at worst, merely voidable, not void absolutely and at all events. Until set aside, at the instance of some one entitled to question it, no stranger (such as defendant here) to the homestead right can successfully impeach it. So far as concerns the immediate parties to the transaction, and all before the court in this action, the notes will be considered as valid, and the security for their payment as voidable only, but, until avoided, attaching to such interest or estate in the realty in question as Flippin's conveyance transferred. The exact extent of that interest or estate we need not attempt to define. It is involved in some obscurity, despite the able rulings of the courts in Texas on the subject of homesteads. But this, at least, is certain, that Flippin's deed (by way of security for the notes) would be effective in several contingencies to pass some sort of substantial interest in the insured property itself, under the decisions in that state. *Jordan v. Godman*, 19 Tex. 273; *Seare v. Sears*, 45 Tex. 557; *Reece v. Renfro*, 68 Tex. 192; *McElroy v. McGriffin*, 68 Tex. 208; *Irion v. Mills*, 41 Tex. 310.

This it would do even if the transaction in question be treated as creating, in substance, a mortgage as defendant claims. But the actual form, which the security for the notes took from the written instruments between Flippin and Meyer & Aronson, was that of

securing a vendor's lien for the purchase money, as represented by the notes.   If that be regarded as the real nature of the transaction, plaintiffs' case would be much stronger under the laws of Texas and, rulings there interpreting them.   Texas Const., art. 16, sec. 50; *Burford v. Rosenfield*, 37 Tex. 42; *Lee v. Welborne*, 71 Tex. 500; *Berry v. Boggess*, 62 Tex. 239.

Looking at the matter in either aspect, the plaintiffs had such an insurable interest in the property as would support a recovery on the facts here exhibited, and the policy was properly transferred to them, according to its terms.   A mortgagee has an insurable interest in the property covered by the mortgage lien, at least to the limit of the indebtedness secured, as has, likewise, a vendor, to the extent of his lien for unpaid purchase money.   So it becomes unnecessary to the decision of this case to determine whether plaintiffs would have a standing in this action by reason of their interest (as assignees of the policy and notes) in the contract of insurance, as distinguished from an insurable interest in the property itself.

II.   The policy before us recites that it is "subject to the three-fourths value clause."   That language appears in the written portion of the instrument.   No other part of it enlarges that phrase into any sort of intelligible agreement that can be dealt with by a court.   It stands alone and unexplained.   No attempt is made in this action to reform the agreement, upon principles applicable to mutual mistake, so that it should include a stipulation on the subject alluded to, but defendant seeks to give to the phrase itself, "subject to the three-fourths value clause," the force of an agreement that, in event of total loss, the property should not be valued at a sum greater than three-fourths of the actual value in ascertaining the amount to be paid for total insurance. This cannot be done.   The language used cannot fairly be expanded by construction to embrace that meaning in the present state of the pleadings and evidence.

III.   The action of· the trial court excluding the policy in the East Texas Fire Insurance Company from consideration in estimating the total concurrent insurance, was abundantly supported by the evidence.   The kind of insurance contemplated by the policy in suit, referring to the clause for the apportionment of the loss, is valid insurance, or such as has, at least, original validity.   The policy in the East Texas company was not of that sort.   It was obtained under the mistaken impression that the policy sued on here, and others, had been canceled, and the insured so represented.   This was sufficient to avoid that policy from the beginning, and that company's refusal to pay it appears just on the facts shown.

The words in this policy; "without reference to the solvency or .liability of other insurers," cannot fairly and reasonably be said to include contracts of supposed insurance; which, for any sufficient cause, fail ever to become operative.   Those words refer to valid insurances, which, though in force at the time of the loss, may not constitute legal liabilities, because of some breach of the terms of the policies, or otherwise.

The judgment is affirmed, with the concurrence of all the members of the court.