## CENTRAL FEDERAL FIRE INS. CO. v. LEWIS et al.
### No. 9343.

Court of Civil Appeals of Texas. Galveston. Feb. 10, 1930.

Rehearing Denied Feb. 27, 1930.

Burgess, Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for appellant.

Hunt & Hunt and H. G. Butts, all of Houston, for appellee Lewis.

Charles Fertsch, of Hallettsville, and Walter F. Brown, of Houston, for appellees Kloppenburg and others.

GRAVES, J.

The insurance company, defendant below, appeals from a $12,856.38 judgment in favor of Mell Lewis, plaintiff, and A. W. Kloppenburg et al., interveners below, of which total $8,484.45 was apportioned to Lewis and $4,371.93 to Kloppenburg and two others in the aggregate, rendered by the court, as for the maturity of its obligations to them under two policies of insurance issued by it to Lewis as the owner of a furnished brick hotel building at Hallettsville, Tex., with a "loss payable" clause in favor of interveners as holders of a mortgage on the building, whereby it agreed to pay him for the total destruction of the properties by fire $10,000 on the building and $2,500 on the furniture, fixtures, and equipment, upon its own findings and this verdict of a jury:

"Special Issue No. 1. Would a reasonably prudent owner, uninsured, desiring such a structure as the one owned by Mell Lewis in Hallettsville, Texas, was before the fire, in proceeding to restore the building to its original condition have utilized the portions of said building left standing after said fire? To which the jury answered: 'He would not.'

"Special Issue No. 2. What was the actual cash value of the premises in question at Hallettsville, Texas, just prior to the fire on October 27, 1927? To which the jury answered: '$15,000.00.'

"Special Issue No. 3. What was the actual cash value of the premises in question at Hallettsville, immediately after said fire? To which the jury answered: '$1,800.00.'

"Special Issue No. 4. What was the actual cash value of the personal property situated in said hotel and destroyed by fire on October 27, 1927? To which the jury answered: '$2,416.00.' "

The litigants will be designated as they severally were in the trial court.

Although the terms of the policies required that as a condition precedent, no proofs of loss resulting from the fire, which occurred on 27th day of October, 1927, and destroyed at least the main superstructure of the building, together with all its insured contents, were ever made, the plaintiff relying upon and the court finding that such a denial of liability as rendered such proofs unnecessary had been seasonably made by the defendant through its state manager.

In this court the defendant contends:

(1) That its requested peremptory instruction for a verdict in its favor as against the plaintiff, Mell Lewis, should have been given, because (a) the undisputed testimony shows that, long after the alleged denial of liability by its state manager, Parsons, and after the receipt by him of advices from its attorneys that the company was not required to definitely state its attitude toward liability until proofs of loss had been furnished, and when the filing would have been within time, the plaintiff refused to furnish such proofs on the ground that notice of loss had been given and that proofs thereof were unnecessary by reason of the fact that the loss was total; (b) it conclusively appears from letters of plaintiffs' counsel demanding definite action of adjustment, or denial of liability, that he did not fail to furnish the required proofs of loss because of the alleged denial of liability by defendant's state manager, Parsons, nor in any way rely thereon to his injury; (c) the plaintiff wholly failed to prove that the build-

ing was a total loss, as he alleged, there being no evidence that the rock foundation of it was either in any way damaged by the fire, or that it could not have been used as a basis for reproducing thereon such a building as existed before the fire.

■ These propositions are overruled. In the first place, the pleadings and evidence were amply sufficient to show that, within the time specified in the policies sued on for furnishing proofs of loss, the defendant, through its admitted state manager, Parsons, not only first notified the plaintiff that it denied liability under and would not pay the policies, but later requested him to surrender them to it; this action upon the insurer's part constituted an anticipatory breach of its contract, rendered proofs of loss unnecessary, and conferred an immediate cause of action upon the insured. Oklahoma Fire Ins. Co. v. McKey (Tex. Civ. App.) 152 S. W. 440; Fire Ass'n of Philadelphia v. Jones (Tex. Civ. App.) 40 S. W. 44, 46; Connecticut Fire Ins. Co. v. Hilbrant (Tex. Civ. App.) 73 S. W. 558; Scottish Union & Nat. Ins. Co. v. Moore, 36 Tex. Civ. App. 312, 81 S. W. 573; Merchants' Ins. Co. v. Nowlin (Tex. Civ. App.) 56 S. W. 198; Delaware Underwriters v. Brock, 109 Tex. 425, 211 S. W. 779; Georgia Home Insurance Co. v. Jacobs, 56 Tex. 372; Fidelity Phoenix Fire Insurance Co. v. Oldsmobile Sales Co. (Tex. Civ. App.) 261 S. W. 492; Fireman's Fund Insurance Co. v. Galloway (Tex. Civ. App.) 281 S. W. 283.

The denial of liability testified to was to the plaintiff himself, was unequivocal and absolute, whereupon the rights of the parties became fixed in the stated legal effect resulting from it, as well as from the demand for surrender of the policies, which was not waived by letters from his attorney urging adjustment of the loss, or giving other reasons for the claim that proofs thereof were not necessary.

■ Furthermore, the advice by letter from its attorneys to plaintiff, relied upon in this connection by the defendant company, did not undertake to withdraw this previously made and unqualified denial of liability direct to the plaintiff himself, nor did it request the plaintiff to furnish any proofs of loss; the only information being that, if he wished to do so, he could file them, in which event he would have to wait sixty days longer before taking action against the company. Obviously the right to sue, already acquired as a result of the anticipatory breach of the contract, was not abrogated by these mere unilateral suggestions.

■ In the second place, such a denial of liability having been shown, which in itself constituted an anticipatory breach of the contract, it was unnecessary for the plaintiff to go further and prove that he relied upon that denial and would otherwise have filed the proofs of loss; in any event, however, instead of being conclusive the other way, we think the evidence in his behalf, especially the testimony of his attorney that he did not know proofs had not been filed until he got the previously discussed letter from the insurer's attorneys, dated January 14, 1928, after which he did not file any because liability under the policies had been denied, was sufficient to establish those facts. Indian River State Bank v. Insurance Co., 46 Fla. 283, 35 So. 228; Francis v. Association (Tex. Civ. App.) 260 S. W. 938.

■ In the third place, the affirmation that there was no evidence of any injury to the foundation of the building such as to impair its availability for reproduction of what the fire destroyed simply runs counter to the direct testimony to the contrary; it is true the foundation was either of rock or concrete, which superficially as to bulk was left standing, but there was ample supporting evidence from the best of sources, two builders of experience in such matters, to support plaintiff's averment that the building was totally destroyed by the fire, as well as the jury's quoted finding thereon under special issue No. 1. No attack has been made upon the form of or the fact of submitting that question to the jury, no objection was made to the testimony referred to, nor is it contended that this finding was against the weight of the evidence. While there were conflicts, we think, without finding it necessary to recapitulate the whole body of the evidence, that this testimony alone defeats the contention made:

"J. C. Calloway, an experienced builder, testified without objection as follows:

"'I would say that a reasonably prudent man, uninsured, would not use the remnants that I saw there for the purpose of reconstructing the building as it was before the fire.'

"He had been constructing brick buildings for twenty years.

"R. E. Bradberry, another experienced builder, gave the following testimony, which was admitted without objection:

"'Based upon my judgment as a builder and upon my experience I would say that a reasonably prudent man, uninsured, would not use as a base the remains there to reconstruct a building such as this was before the fire, assuming that it was a three story building prior to the damage by this fire.'"

See Royal Insurance Co. v. McIntyre, 90 Tex. 170, 37 S. W. 1068, 35 L. R. A. 672, 59 Am. St. Rep. 797; Fire Ass'n of Philadelphia v. Strayhorn (Tex. Com. App.) 211 S. W. 447; Assurance Co. of America v. Continental Savings & Building Ass'n (Tex. Civ. App.) 8 S. W. (2d) 787.

■ (2) That special issues 2 and 3 do not submit the proper measure of damages under

the policy, which is "the actual cash value of the property at the time of the loss with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality," nor can they form any basis for the judgment in plaintiff's favor, based upon his allegation of a total loss, since they are referable only to interveners' alternate plea for the amount of their debt out of an alleged greater damage in any event, and the verdict on special issue No. 1 is without any evidence to support it.

A complete answer to these presentments is that the jury found, on what has been herein determined to be sufficient evidence, that the building was a total loss, and that rendered special issues 2 and 3 immaterial.

■ (3) That there was reversible error in excluding the proffered testimony of Dr. Paul Renger, and J. F. McKnight, bearing, respectively, on the cash market value of the hotel property, and its past operation at such a loss, all tendered as revelant under special issues 2 and 3. These issues themselves being immaterial, the complained of rulings were likewise so. It is the same also as to the complaint against the admission of the witness Boring's testimony, and the exclusion of that of N. A. Moreland bearing on the cash value of the furniture at the time of the fire. The evidence being sufficient to support the allegations of the plaintiff and interveners to that effect and the findings of court and jury that there was a total loss of both the building and its insured contents, all testimony as to the value of either became immaterial, because, in that contingency, the insurance contract between the parties fixed the amounts recoverable.

■ (4) That three policies of fire insurance issued by the Fidelity Union Fire Insurance Company to S. J. and M. C. Lipscomb, predecessors in ownership of the hotel property to the plaintiff, Lewis, one of them for $2,000 of date August 18, 1927, and the others for $2,000 and $1,500, respectively, to become effective September 11 and 16, respectively, of 1927, all with loss payable clauses in favor of the interveners, constituted and remained other insurance within the effect of R. S. art. 4931, wherefore the trial court erred in not rendering a judgment allowing the defendant to prorate its liability to the interveners with all three of such Union Company policies.

■ We overrule this insistence, holding the Union policies referred to void and ineffective for the claimed effect, under each and all of the countervailing considerations thus presented by the opposing litigants:

"It was stipulated in each of the Fidelity Union policies issued to the Lipscombs that the policies should be void if the insured should thereafter procure any other contract of insurance on the property covered in whole or in part by the policies, and, as the proof shows that the intervenors, without knowing that the Lipscomb policies had been issued, instructed the plaintiff to take out insurance on the property with a loss-payable clause in favor of the intervenors, and the plaintiff did take out such insurance as so requested and reported to the intervenors that he had done so, the Fidelity Union policies were void and did not constitute concurrent insurance at the time of the fire.

"Each of the Fidelity Union policies contained a stipulation that it was void if the interest of the insured in the property was not truly stated therein, and, as the policies dated in September, 1927, became effective, if at all, after the Lipscombs had parted with all of their interest in the property, and such policies stated that the Lipscombs were the owners of the property, these policies were void from their inception, and did not constitute concurrent insurance, at the time of the fire."

"An insurance policy is a contract between the parties named, to-wit, the insurer and the insured, and when the purchaser of either real or personal property buys the same on which there is existing insurance, if he is unable to procure an assignment of the same with the consent of the insurer, there is no contract as between such subsequent purchaser and the insurance company, so that, in so far as appellee Mell Lewis and the defendant are concerned, there was no concurrent or additional insurance on this property, as appears from the undisputed testimony of appellee Lewis when a witness in his own behalf, he having made repeated efforts to procure an assignment of the policies complained of, but without success."

See Cooley on Insurance (2d Ed.) p. 5018; Leibrandt & McDowell Store Co. v. Fireman's Ins. Co. (C. C.) 35 F. 30; Forbush v. Western Massachusetts Ins. Co., 4 Gray (Mass.) 337; Parks v. Hartford Ins. Co., 100 Mo. 373, 12 S. W. 1058.

(5) That, "since defendant is entitled to prorate its loss as against intervenors, so that the liability of the defendant to intervenors is but $2,732.45, the judgment in favor of the plaintiff as against the defendant for $10,000.00, the full amount of the policy, with credit to the defendant for any amount paid intervenors, would, when intervenors are paid the $2,732.45, leave as a balance due the plaintiff $7,267.65, an amount greater than his interest in the policy, the judgment as so rendered in effect amounts to a double recovery."

This assignment being premised upon the assumption that the defendant was entitled to prorate its loss on account of the Fidelity Union policies, which we have held void and ineffective, obviously cannot be upheld.

478

Further discussion is deemed unnecessary, as these conclusions determine the merits of the appeal. The judgment has been affirmed.

Affirmed.