FRANCIS JORDAN v. MINERVA J. GODMAN.

Where the husband, without being joined by the wife, sold the homestead in which they were then residing, and they immediately removed to Arkansas, where the husband died, and several years afterwards the surviving wife returned and brought suit to recover the homestead, it was held that her removal from the State was a relinquishment of any right of homestead which she might have retained, had she continued an inhabitant of this State.

The provision in the thirteenth Section of the Act of January 21st, 1850, "to secure to actual settlers within the limits of the colony granted to Peters and others, commonly known as Peters' Colony, the land to which they are entitled as colonists," to the effect that the certified copies which, in certain cases, the Commissioner appointed in compliance with said Act, was required to deliver to the colonists, should not be transferrable, (which fact should be expressed on their face,) was not intended and did not have the effect to prohibit the alienation of the land by the colonist.

Appeal from Tarrant. Tried below before the Hon. John H. Reagan.

In 1850 J. J. Godman proved his claim to six hundred and forty acres of land, as the head of a family, before the Commissioner appointed under the Act of January 21, 1850, to secure to all actual settlers within the limits of the colony granted to Peters and others, commonly known as Peters' colony, the land to which they are entitled as colonists. (Hart. Dig. p. 682.) In the same year Godman sold his claim to Francis Jordan for $250, and gave him a bond for title, acknowledging the receipt of the purchase money. Same year, immediately after said sale, Godman moved to Arkansas, and there died, (date not stated.) Godman, with his wife and children, had resided on the land two or three years before the sale to Jordan, and was living on it at the time of the sale. Jordan had the land surveyed, and procured a patent in May, 1854. In the Spring of the year, 1854, the appellee, widow of

said Godman, returned from Arkansas and brought this suit to recover the land in her own right, and as the next friend of her children, who were all minors.   The plaintiff gave in evidence a certified copy from the General Land Office, of a certificate delivered to Godman by the Commissioner, under the thirteenth Section of the said Act, (Hart. Dig. Art. 2241,) and of the field notes.

Upon this state of case, the Judge charged the jury that if the conveyance by Godman to Jordan, was made before the 10th day of February, 1852, it was illegal and void, and they should find for plaintiff.   Verdict and judgment for plaintiff, &c.

*J. M. Crockett,* for appellant, cited the 10th Section of the Act of February 10th, 1852, relating to lands in Peters' colony, which legalized all transfers theretofore made of such certificates ; and to the point that the provision was not unconstitutional, cited De Cordova v. The City of Galveston, 4 Tex. R. 479 ; 1 Kent, Com. 455 ; Satterlee v. Mathewson 2 Peters, 380 ; Watson v. Mercer, 8 Id. 88.

Mr. Crockett also argued that the object of the provision in 13th Section of the Act of 1850, to the effect that the certified copies which the Commissioner was required to issue colonists in certain cases, should not be transferable, which fact should appear upon their face, was to prevent the fraudulent manufacture of such certificates, for the purpose of sale, and not to prohibit the alienation of the land to which the colonist was entitled.

Also, that Godman had a mere chattel interest in the land, to which the homestead right of the wife did not attach, but that if it did, then the husband having changed the domicil of himself and wife to another State, her homestead right could not be retained by her.

*Burford & Good,* for appellee.   We think the charge of

the Court correct, because the Act of Jan. 21st, 1850, by virtue of which this certificate (or copy of entry in Commissioner's book) was issued, expressly forbids its transfer, (Hart. Dig. Art. 2241,) and the transfer having been made in direct violation of that law, is null and void. (Hunt's heirs v. Robinson's heirs, 1 Tex, R. 748; Chitty on Cont. 230; 2 Kent, side page 466.) So far as the act of 1852 attempted to legalize transfers of colony certificates made before its passage, the Court regarded it as retroactive and in direct violation of the Constitution of the State. In this opinion we fully concur. (See Sec. 14, Art. 1st, Const. ; Hart. Dig. 52.) At the time the transfer from Godman to Jordan was made, it had no validity—was null and void—and that the Legislature are unauthorized by the Constitution of this State to give to it vitality and validity, seems to us a question too plain for discussion in this Court. The adjudications on Art. 10, Sect. 1, of the Const. U. S. have no relevancy whatever to this cause. The question is to be tested by the Constitution of our own State, and not by the Const. U. S.

WHEELER, J. It cannot be doubted that by removing and changing her domicil from this to another State, the wife relinquished any right of homestead which she might have retained had she continued an inhabitant of this State. Her removal from the State is inconsistent with any right remaining to her former homestead, and effectually precludes her from afterwards asserting such right.

If the plaintiffs have a right, it is because their ancestor, Godman, had not the ability to dispose of his interest as a colonist in the land in controversy. It is insisted for the appellees that he had not, in consequence of the inhibition, in the 13th Section of the Act of the 21st of January, 1850, to secure to the settlers in the colony of Peters and others, the lands to which they were entitled, of the right to transfer the copies furnished them from the entries in the books of the Commis-

sioner appointed under the Act. (Hart. Dig. Art. 2241.) The question has arisen incidentally in other cases, (Merryfield v. Wilson, 14 Tex. R. 224.) But the effect of the prohibition has not heretofore been brought directly under discussion and examination by counsel, in argument, and is therefore to be considered an open question. The argument for the appellant is, that the Statute was not intended and cannot be deemed to have the effect to operate a prohibition of the right of the colonist to sell or dispose of the right or interest which he had acquired in the land ; but that it was only intended to prevent the frauds which might have been practised, by the transfer of these copies by assignment, as had been the case with certificates of headright issued by the boards of Land Commissioners. These copies were not intended to constitute the primary evidence of the right of the colonists ; but only to serve as an authority to the Surveyor to survey for them the lands to which they were entitled, in case a survey was necessary. They, in fact, conferred no right, and were not essential to the perfecting of the right into a patent ; and not constituting muniments of title, the prohibition of their transfer did not affect the power of alienating the right. A literal construction of the Statute would certainly lead to this conclusion ; and the argument is strengthened by reference to other provisions of the Act. The first Section prescribes what is requisite to entitle the emigrant to land. Several succeeding Sections provide in what manner the land shall be selected ; having a reference to the surveys which were supposed to have been made by the colony contractors in sectionizing land embraced within the limits of the colony. It is provided that the settlers shall be confined to surveys theretofore made, (with certain excepted cases,) if the field notes can be obtained; if not, the County or District Surveyors may be required to survey their land for them. (Hart. Dig. Art. 2229 *et seq.*) The seventh Section prescribes the proof that shall be made before the Commissioner to be appointed under the Act ; the

eighth makes him the judge of its sufficiency ; and the ninth makes it his duty to keep a book in which he is required to record the names of those who are entitled, and the proof by which their right is established, and this book is required to be returned by the Commissioner to the Commissioner of the General Land Office. It is further provided in the tenth Section that, in case the surveys heretofore made cannot be obtained by the first day of April thereafter, the County or District Surveyor shall proceed to resurvey the lands, having respect to and being governed by the surveys theretofore made ; and shall make a return of his field notes, with a map of the surveys, every three months, to the Commissioner of the General Land Office. Upon the returns of the Commissioner and the Surveyor, the eleventh Section provides that the Commissioner of the General Land Office shall proceed to issue patents to the parties, who by the evidence thus furnished may appear to be entitled. It is thus evident that no certificate was necessary to enable the colonists to obtain their patents. The Act does not provide for or contemplate the issuing of certificates as evidence of the right to land. There was no necessity even of a survey, if the field notes of the previous surveys could be obtained ; but the patent might issue upon the return of the Commissioner alone, who was required to annex a copy of the field notes of the surveys. (Id. Art. 2236–7–8 and 9.) It was only in case the field notes of previous surveys could not be obtained, that a survey would become necessary ; and it was only in that event, that there could be occasion to furnish the surveyor with any evidence of right, or authority to him to make survey. The only object, therefore, of providing, in a subsequent Section, (Hart. Dig. Art. 2241) for the delivery to the colonist of a copy of the entry in the Commissioner's book, was, it would seem, to provide a convenient mode of furnishing the Surveyor the evidence on which he might proceed to survey the land, should that become ne-

cessary. The Act accordingly provides that the copy shall be such authority ; but it does not give it any other effect ; nor does it forbid the making of the survey without it. These copies were not issued, as were headright certificates, under former laws, to serve the party as his evidence of right ; they are not elevated by the Act to the dignity of certificates, which shall become muniments of title. But they were intended to serve a mere temporary purpose, in a certain contingency ; if that contingency did not arise, they might be dispensed with altogether. But as they might be multiplied indefinitely, and as the assignment of them might be supposed to transfer the right of the holder, and they might become the instruments of numerous frauds upon innocent parties, it was thought proper to provide that they should not be transferrable, and should so express on their face. (Ib.) This seems the most natural interpretation of the legislative intention, to be deduced from the provisions of the law. If it had been intended to prohibit the alienation of the land, it is reasonable to suppose it would have been so expressed. The prohibition of the transfer of these copies merely was certainly not the mode by which that object would have been sought to be accomplished. For, if the field notes of the former surveys had been obtained, there would have been no occasion for the issuing of these copies ; and none would probably have ever issued. There would then have been nothing on which the inhibition could operate directly ; and if held to have any force or effect, it must have been by a forced and strained construction to make it operate upon the right, which was independent of the copy. The right of alienation is incident to, and generally inseparable from the right of dominion or property. Every man has a right to dispose of that which is his exclusively, absolutely as he pleases, provided he makes no disposition of it which is prohibited by law ; and the legislative authority can have no other foundation for the exercise of a restraining or prohibitory power, as respects the use of this

Jordan v. Godman.

right, than such as may be found in public policy, or the duty to provide for the public good. Where no public necessity is discernible, the Courts ought not to construe legislative provisions to operate a restriction upon individual rights, unless that intention is manifest in the enactment. Any legislative interference with private right, which a due regard for the public good does not sanction and approve, is an act of tyranny, for it is an unnecessary restraint of the liberty of the citizen ; all legislative acts which abridge the exercise of any right, ought to be strictly construed. We do not think the intention is manifest, in the Act in question, to prohibit the colonists from selling their land if they saw proper. In this case there was a sale of the land for a valuable consideration ; and we are of opinion that it was effectual to divest the interest of the vendor, and his heirs, whatever that interest was.

It is difficult to conceive of a case having less of right or justice to recommend it, than that of the plaintiffs. The abandonment of the country by their ancestor before taking any steps to secure and perfect his title, must necessarily have resulted in the loss of it. The defendant paid what was doubtless then deemed an equivalent for the land ; he was at all the expense of having it surveyed and patented ; and now the plaintiffs seek to deprive him of it, and to appropriate to themselves the fruits of his labor and means, without any compensation whatever. If we had been of opinion that the sale was void, the plaintiffs must still have reimbursed the defendant his expenses in obtaining for them the patent, before they could recover the land ; and I apprehend he would have been entitled moreover to compensation for his services, or to an interest in the land, equal to that usually given for the locating and securing of titles to lands. But however that might be, we are of opinion that the sale was effectual to divest the right of the vendor and those claiming under him ; and that

the ruling of the Court to the contrary is erroneous. The judgment is reversed and the cause remanded.

Reversed and remanded.