## No. 5520.

### D. W. AND JANE REECE v. JAMES A. RENFRO ET AL.

1. HOMESTEAD.—The homestead rights of the husband and wife are lost by a voluntary abandonment of the homestead. Not only can the husband bind his children by such voluntary abandonment, but the homestead rights of the wife also are lost by her voluntarily leaving the home and accompanying the husband when he abandons it.

2. SAME.—A husband and wife left their home in Texas, and after removing to another State, acquired a home there. After seven years the husband, during a temporary visit to Texas, sold the Texas home. Afterward the husband and wife returned to Texas, and, after living in a rented home, occupied the Texas homestead as tenants of another whose claim of title was in opposition to their claim of homestead rights. The wife left the Texas home unwillingly, and when in another State frequently expressed her intention to return to it, though this fact was unknown to the purchaser from the husband, *held:*

   (1) The declarations of the wife of an intention to return to her home could not outweigh the evidence of abandonment furnished by the acts and conduct of herself and husband during so long a period of time.

   (2) It was too late to repudiate the tenancy and assert homestead rights against their landlord's claim of title.

   (3) The homestead right was abandoned.

3. PAROL EVIDENCE.—When land is owned jointly by several persons, the legal title being in one of the number who conveys by deed an interest therein, in general terms, without designating whose interest is conveyed, parol evidence is admissible to show what particular interest was intended.

APPEAL from Johnson. Tried below before the Hon. Jo. Abbott.

*Bledsoe & Fisher,* for appellant, cited Callison v. Gray, 25 Texas, 86, 87; Boehl v. Wadgymar, 54 Texas, 592, 593; Epperson v. Young, 8 Texas, 136; Booth v. Upshur, 26 Texas, 67; Castro v. Illies, 13 Texas, 236; Shields v. Hunt, 45 Texas, 426, 427; Custard v. Musgrove, 47 Texas, 220; Teal v. Terrell, 48 Texas, 507, 508; Smith v. Chenault, 48 Texas, 455; Freeman on Cotenancy and Partition, sections 55, 56; Thompson on Homesteads, sections 170, 171, 172; Airs v. Shock, Texas Law Review, volume 3, number 10, page 155; Cline v. Upton, 56 Texas, 320; Cross v. Everts, 28 Texas, 528; Shepherd v. Cassidy, 20 Texas, 24; Gouhenant v. Cockrell, 20 Texas, 96; Foreman v. Meroney, Texas

Law Reporter, July, 1884, page, 232; same case, Texas Law Review, volume 4, number 5, page 76; Austin v. Townes, 10 Texas, 24; McMillen v. Warner, 38 Texas, 410; Franklin v. Coffee, 18 Texas, 417; Thomas v. Williams, 50 Texas, 269.

*Brown, Ramsey & Crane,* for appellee, cited Jordan v. Godman, 19 Texas, 273; Smith v. Uzzell, 56 Texas, 315; Carter v. Wheeler, Texas Law Reporter, volume 1, number 2, page 195; Woolfolk v. Ricketts, 48 Texas, 28.

WILLIE, CHIEF JUSTICE. Renfro brought this action of trespass to try title to recover of D. W. and Jane Reece one hundred and fifty acres of land, and at the same time sued out a writ of sequestration. The defendants claimed the property as their homestead, and having alleged that the land in suit was part of a three hundred and twenty acre tract in which the other appellees claimed an interest, had them made parties defendant and prayed for a partition. The following are substantially the facts of the case.

The land in controversy was patented September 23, 1870, to William Reece, assignee of Amasa Howell. The Howell certificate belonged jointly to William and his brother D. W. Reece. Appellants are husband and wife, and lived on the land before the patent was granted, and William lived with them. William moved to another place in 1865. D. W. Reese and family, in 1867 or 1868, rented the place to one Turpin and removed to Arkansas. In October, 1871, William Reece, under verbal instructions from D. W. Reece, deeded the south half of the three hundred and twenty acres to Abraham Reece. The latter paid part of the consideration to D. W. Reece, and the rest of it was paid to him after Abraham's death by his children. Abraham Reece went into possession of said south half in 1871 and occupied it until his death, and his children have occupied it ever since. D. W. Reece and wife returned from Arkansas to Texas in 1875 and lived in Tarrant county, and in 1877 lived in Ellis county, on a place different from the one in controversy. In the fall of 1877 D. W. Reece and wife moved on this land, renting it from William Reece, and as such renters occupied it until put off by the officer executing the writ of sequestration. William Reece and wife, in July, 1882, sold to Renfro a part of the three hundred and twenty acre tract, which is the land in controversy.

Not until after that time had Reece ever heard of the claim of D. W. Reece and wife to the land sold to Renfro.

There was proof showing that Mrs. Reece left her homestead unwillingly when the family removed to Arkansas, and that she frequently, whilst living in that State, expressed her intention to return and reclaim the homestead she had left. There is nothing in the evidence tending to show that these facts were known to Renfro when he purchased, or to William Reece, who made the deed to him.

The court, to whom the cause was submitted, rendered judgment in favor of Renfro for the one hundred and fifty acres, and quieted the title of the other appellees in the portions of the three hundred and twenty acres respectively claimed by them. From this judgment D. W. Reece and wife have appealed to this court.

It has been frequently held by this court that the homestead right may be lost by abandonment, and that to constitute abandonment it is not necessary that another homestead shall have been acquired. (Jordan v. Godman, 19 Texas, 273; Smith v. Uzzell, 56 Texas, 315; Woolfolk v. Ricketts, 48 Texas, 28.)

One instance in which an abandonment has been conclusively presumed against both husband and wife is where they have removed from Texas to another State. In such case the wife is held to have relinquished any right of homestead, which she might have retained had she continued an inhabitant of this State. "Her removal," say the court "from the State is inconsistent with any right remaining to her former homestead, and effectually precludes her from afterwards asserting such right." (Jordan v. Godman, 19 Texas, 273.) This principle was re-asserted in the case of Smith v. Uzzell, 56 Texas, 315, and it was held that the power of the husband to bind his children by such abandonment was clear, and the rights of the wife were lost by her voluntarily leaving the homestead and accompanying her husband when he abandoned it.

The only difference between those cases and the present lies in the fact, that in them the wife made no declarations as to her supposed abandonment, whilst in this she expressed an unwillingness to leave, and declared upon several occasions whilst in Arkansas an intention to reclaim her homestead in Texas. These statements do not seem to have been made known to the appellee or the persons under whom they claim title. The effect of such declarations is fully passed upon in Woolfolk v. Ricketts,

supra.  It was there held that when contemporaneously made they could have weight only when the removal was uncertain and equivocal in its character.  It was further said:  "It would be most unreasonable to ask that the mere declarations of the wife that she did not intend to abandon the old place as her homestead when she removed from it, with her husband, and had never subsequently designed or consented to do so, should outweigh the contrary evidence furnished by the acts and conduct of herself and husband during the period of nine or ten years while residing elsewhere."

Here the conduct of the husband and wife were unequivocal to all appearances.  They abandoned Texas for another State. They purchased there a house upon government ground and lived in it.  They remained out of the State for seven years; and so far from giving any indication of an intention to return, gave every indication of the contrary.  The husband made a temporary visit to the State, and sold the interest of himself and wife in the land, and received a part of the purchase money, subsequently receiving the balance.  After the family had remained in Arkansas seven years they returned; but, instead of laying claim to the land as their homestead, they rented land in other places and lived upon it.  And finally when they did reoccupy the land from which they had removed, it was as tenants of a party whose claim was necessarily in opposition to their homestead right, thereby acknowledging that they had no homestead claim to the property.

In the language of the case just cited, every action of both husband and wife for a series of years, indicated that their removal from their old home was intended to be final and permanent, and it would be inconsistent with good faith and fair dealing to allow the wife's declarations to overcome the proof to be derived from their open and palpable abandonment of their former homestead.  The title of the appellees to the land accrued during the time appellants were acting in such manner as to induce the belief that they had abandoned all claim to it. If they could, under the law, change their minds and resume their former homestead, under any state of case, they could do so only up to the time that the title under which the appellees claimed had taken effect. (Shepherd v. Cassidy, 20 Texas, 24.) It was too late to repudiate their tenacy after purchase from their acknowledged landlord.  We think the district judge

properly held that the appellant's homestead right had been lost by abandonment.

A bill of exceptions was taken to the admission of evidence to show that William Reece, in making the deed to Abraham Reece, intended to convey, not his own interest in the land, but that of D. W. Reece. This deed is not made part of the bill of exceptions, nor is it in the statement of facts to which we are referred for its contents. What is said about it in the statement of facts would lead to the conclusion that the deed on its face purported to convey the interest of D. W. Reece, though signed by William Reece, who held the legal title for him. The statement of facts says it was a deed from William Reece to Abraham Reece, dated October 20, 1871, for all of the south half of the Amasa Howell three hundred and twenty acre survey, and that it was a general warranty deed, and for a valuable consideration, to wit, the sum of five hundred dollars in hand paid. All this it might have been, and yet, on its face, expressly conveyed D. W. Reece's interest. That it did so might be inferred from William Reece's testimony. He says: "I made the same for D. W. Reece, who, while here in 1870, and before I got the patent, instructed me, when I got the patent, to deed to Abraham Reece his share of the land. There is nothing in the bill of exceptions or statement of facts to show that the deed purported to convey William Reece's interest, and that parol evidence was introduced to show that it conveyed D. W. Reece's share. If, however, the deed was in general terms, without stating whose interest was conveyed, we think it was proper to prove this by parol, as the legal title being in William Reece, he could convey either interest, and such language might be referred as well to one interest as the other. All parties had notice of the character of the deed and the land intended to be conveyed, and none were deceived by the idea that the land of William Reece was meant instead of that of his cotenant.

We do not think it necessary to consider the point raised by the second bill of exceptions, for if the deed was improperly admitted—which, however, we do not hold—it did not prejudice defendants. The case was tried by the court, and the title of the parties claiming under this deed was abundantly proved by other evidence.

There is no error in the judgment, and it is affirmed.

*Affirmed.*