FR. BECK & CO. v. E. S. AVINDINO ET AL.

Decided May 24, 1902.

1.—Homestead—Abandonment.

An abandonment of a homestead may be shown without proof that the owner has acquired another. Const., sec. 51, art. 16, construed.

2.—Execution—Levy—Homestead Claim—Estoppel.

Where a defendant in execution pointed out to the officer for levy certain lots not occupied by him at that time, he was not estopped from attacking as illegal a levy which the officer nevertheless made on his personal property by reason of the fact that in a former suit he had resisted foreclosure of a mort- . gage on the lots on the ground that they were homestead at the time the mort- gage was given.

3.—Same—Pointing Out Property—Written Description.

Where the defendant in execution pointed out to the officer for levy certain town lots by giving verbally their lot and block numbers, and the officer knew what property was thus designated, but refused to levy on it for a reason other than want of description, there was a sufficient compliance with the statute as to pointing out the property, although it appears to contemplate that a written description of the property by metes and bounds shall be furnished to the officer. Rev. Stats., art. 2344.

4.—Same—Damages—Repurchase by Defendant.

Where plaintiff in execution bid in the goods levied on and at once sold them for the amount of the bid to a third party, and such party, for the same amount, sold them to defendant, who thus got them back for an amount less than that of the judgment debt, defendant was not entitled to recover damages of plaintiffs for illegality in the levy, and this although the sale by which he got back the goods was a conditional one, the title to remain in the seller until defendant had finished paying the price.

Appeal from Bowie. Tried below before Hon. J. M. Talbot.

*Glass, Estes & King,* for appellants.

*Henry & Henry,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—This suit was brought in 1888 by E. S. Avindino against Fr. Beck & Co. to recover the value of a stock of millinery levied on and sold under and by virtue of an alias execution issued on April 12, 1888, on a judgment for $765.51 rendered in 1886 in favor of Beck & Co. and against Avindino. It was claimed that the levy and sale were illegal and void because the levy was made without Avindino being called on to point out property to be levied on, and be- cause he protested against the levy and demanded that the writ be levied on two lots belonging to him situated on Rose Hill, in the city of Texar- kana, Texas, and which were alleged to be unincumbered, not exempt, and of value more than sufficient to satisfy the writ. The case was tried and Avindino obtained a judgment, which was reversed on appeal in 1891. Beck v. Avindino, 82 Texas, 314. Mandate was filed in 1892, but the case was not put on the docket of the District Court or again· called for trial until 1897. In the meantime Avindino had died, and in

1897 his children made themselves parties and obtained a judgment on a trial when Beck & Co. were not represented, which judgment was also reversed. Beck v. Avindino, 20 Texas Civ. App., 330. Another trial was had before a jury and appellees were again successful, and Beck & Co. have again appealed.

The defenses relied on by appellants are: (1) That the lots were not subject to levy, because the same constituted Avindino's residence homestead. (2) That the note on which their said judgment against Avindino was based was secured by mortgage on the said lots given by Avindino; that Avindino defeated a foreclosure on the ground that the lots were his homestead; that if the lots were not homestead when pointed out for levy, Avindino was, for the reasons stated, estopped from asserting the fact. (3) That Avindino did not legally point out the lots for levy because he did not deliver to the officer a description thereof by metes and bounds; and (4) that Avindino, through a purchase in the name of his wife, recovered the goods sold under the levy for a sum less than the debt owing to them by him. We will state the material facts as briefly as possible, and will then consider the defenses urged by appellants in the order stated.

In 1882 Avindino resided with his family on the said lots and the same was the residence homestead. He owed a debt to Beck & Co. and gave a mortgage on said lots and a business lot situated on Broad street, in the city of Texarkana, to secure the debt. Avindino was a paper hanger and handled wall paper, a stock of which he kept in the house on the Broad street lot. His wife conducted a millinery business in the same building. Soon after the execution of the mortgage Avindino moved his family from the Rose Hill lots to the Broad street lot, which was thereafter occupied both as a family residence and as a place of business. The move was made because the condition of Mrs. Avindino's health made it necessary for her to be nearer her business. In the latter part of 1884 the Avindinos closed up their business at Texarkana, rented out all of their said lots, and moved to Temple, Texas, where they remained a little over two years. While at Temple they carried on the same business in which they had been formerly engaged at Texarkana. Soon after they left Texarkana, Beck & Co. brought suit on the debt owing to them by Avindino and sought to foreclose the mortgage given to secure the debt. Avindino resisted a foreclosure on the ground that the mortgage was void because of the homestead character of the mortgaged property. In 1886 a personal judgment for $765.51 was rendered against Avindino, a foreclosure being denied. In January, 1887, Beck & Co. had an execution issued on said judgment and caused the same to be levied on the Broad street property. There was a sale under the levy, Beck & Co. becoming the purchasers on their bid of $100, which was credited on the judgment. About this time the Avindinos returned to Texarkana. They had acquired no real estate during their sojourn at Temple. When they left Temple they closed out the business they were conducting there and desired to re-embark in business at

Texarkana. On reaching Texarkana they found Beck & Co. in possession of the Broad street lot. They thereupon rented another lot and opened a business thereon. They did not move back on the Rose Hill lots, but occupied the rented place of business as a family residence. Avindino then sued Beck & Co. for the recovery of the Broad street lot, his contention being that the move to Temple was only temporary and was occasioned by Mrs. Avindino's bad health, and that he had never abandoned the Broad street lot as his place of business. Pending the suit, Beck & Co. had an alias execution issued and levied on a stock of millinery belonging to Avindino, the business being conducted by Mrs. Avindino and in her name. This litigation followed, with the results stated. Avindino obtained a judgment in 1889 against Beck & Co. for the recovery of the Broad street lot. The Avindinos sold one of the Rose Hill lots, and in January, 1890, moved back on the other Rose Hill lot, where Mrs. Avindino died in June of that year. Avindino then moved with his children to Jefferson, Texas, and later on returned to Texarkana. After the return from Jefferson, Avindino and his children lived on the Rose Hill lot until his death, which occurred in 1894. His children, the appellees, still own the said lot and the broad street lot.

1. Under their second, sixth, seventh, thirteenth, and fifteenth assignments of error appellants present the following proposition: "The lots said to have been pointed out had been previously claimed and adjudged to be the homestead of Avindino and his family. If it had been lawful to subsequently point them out to the sheriff for seizure, it was necessary for him to have abandoned such use of them, with an intention never to return thereto, and to have acquired another and different homestead, and the burden of proof to show this was upon Avindino." The trial court instructed the jury to find for appellants unless they believed that, prior to the time the lots were pointed out for levy, Avindino had abandoned the same as his homestead, with the intention of never returning thereto, and that on this issue the burden of proof was on the appellees, but declined to give a special charge requested by appellants to the effect that an abandonment was not shown unless Avindino acquired another homestead. The question to be determined is, whether abandonment of a residence homestead can be shown without proof that the owner has acquired a new homestead.

The contention of appellants that the acquisition of another homestead must be shown in order to establish an abandonment is based on that part of section 51, article 16, of the present Constitution, which reads thus: "Provided, that any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired." Under previous Constitutions it was held that there might be an abandonment, although a new homestead has not been acquired. Shepherd v. Cassidy, 20 Texas, 30; Gouhenant v. Cockrell, 20 Texas, 97; Woolfork v. Ricketts, 41 Texas, 363. But these cases are not necessarily decisive of the question, as the Constitutions under which they arose contained no provision relating to the acquisition of

another homestead. However, the same rule has been applied since the adoption of the Constitution of 1876. Reece v. Renfro, 68 Texas, 192. Other decisions to like effect may be found.

These decisions are in accord with the generally accepted construction, and even if we were in serious doubt upon the question we would hesitate long before overturning a rule which has prevailed since the days of the Republic. But it seems to us that there is little room for doubt. It was the evident purpose of the framers of the Constitution, in adopting the provision quoted above, to prevent every renting of the homestead from constituting an abandonment. They did not undertake to prescribe what would amount to an abandonment, but simply declared that a renting of the homestead, provided that it be temporary and a new homestead is not acquired, will not be an abandonment. There is no abandonment if the renting is merely temporary and if the owner has not acquired another homestead, but if the renting is not temporary or if the owner has acquired a new home, the abandonment may be complete within the terms of the constitutional provision relied on by appellants. If it had been intended to change the rule so long established, such intention would have been manifested by a provision declaring that the homestead should not be considered abandoned until a new homestead had been acquired. The doctrine that property which is once a homestead is always a homestead, unless the owner has acquired another home, can not be accepted at this late day. The right to abandon a homestead without having acquired another can not now be questioned. We conclude that the trial court did not err in so holding, and that the proposition of appellants is without merit.

2. Under the ninth assignment of error appellants present this proposition: "The appellees having in a legal proceeding between these same parties, and involving this same debt, assumed and successfully maintained the position that the Rose Hill lots were their residence homestead, were estopped afterwards in the same suit, simply because their interests had changed, from assuming a contrary position to the prejudice of appellants." The proposition might be entirely sound, if the facts of the case justified the contention of appellants that the appellees have, in this litigation, assumed a position contrary to the position assumed by their father in the foreclosure suit. The position assumed by E. S. Avindino in the suit brought against him to foreclose the mortgage on the said lots was that the mortgage was void because at the time it was given, in 1882, the lots were his homestead. The position of appellees in this suit is that Avindino, prior to the time the lots were pointed out for levy in 1888, had abandoned his said homestead and that the lots were therefore no longer exempt. The positions are not inconsistent. Avindino in the foreclosure suit did not assert that he had not abandoned the lots as his homestead. The appellees are not contending, in this case, that the lots were not homestead when the mortgage was given. The defense of estoppel has not been made out, and the assignment is therefore overruled.

3. Under the third, eighth, and eleventh assignments of error appellants present this proposition: "When property consisting of real estate is pointed out to the sheriff to be levied on, a description of the same by metes and bounds must be delivered at the time of the designation to the officer holding the writ." The evidence is conflicting on the issue as to what occurred in regard to pointing out the lots for levy. The evidence warrants the conclusion that when the sheriff went to make the levy on the goods, Mrs. Avindino protested against such levy and demanded that the execution be levied on the Rose Hill lots, her husband not being present; that when Avindino learned of the levy on the goods he, through his attorney, demanded of the sheriff that the levy be released and the writ levied on the said lots. It is conceded that no written description of the lots was given to the sheriff, but the evidence introduced by the appellees is sufficient to show that at the time the lots were designated for levy they were described to the officer as being lots 15 and 22 in block No. 11 of Tilson & Pitcher's addition to the city of Texarkana, Texas, which is a correct description of the lots. While a written description appears to be contemplated by the statute, it is not directly required. Rev. Stats., art. 2344. The objects of the statute in requiring the defendant in execution to give a minute description of the lands pointed out for levy were to make certain the seizure of the identical lands designated; to relieve the officer and plaintiff in execution of the trouble and expense of procuring a correct description, and to facilitate inquiry as to the value, title, and liability to levy of the property designated for seizure. In this case the sheriff and the plaintiffs in execution understood exactly what property was offered for levy and there was no question as to title or value. No point was made that the description was insufficient. The objection to making the levy was based solely on the ground that the lots were not subject to forced sale, being Avindino's homestead. Under these circumstances we think that the description given was a substantial compliance with the statute. It was such a description as would, if incorporated in a sheriff's deed, have been sufficient to identify the land levied on and sold. Had the officer made the levy on the lots as described to him the levy would not have been defective for want of proper description. The failure to give a description in writing was not the cause of the refusal to levy on the lots, and the reason for not making the levy as demanded arose from a cause which did not in any way relate to the question of description. Ross v. Lister, 14 Texas, 475. Our conclusion is that the contention of appellants is not well taken.

4. Appellants pleaded that at the sale, under their said alias execution, of the stock of millinery, they became the purchasers thereof on their bid of $530 which was credited on the writ; that immediately after the purchase, and before the goods had been removed, damaged, or injured, they sold the same to Mrs. M. Levy for the said sum of $530; that Mrs. Levy was at the time acting for Mr. and Mrs. Avindino, and that she at once turned the goods over to them for the price and considera-

tion of $530, which amount Mrs. Avindino subsequently paid to Mrs. Levy out of the stock of goods without paying interest or other charges on same; that the sum so paid to recover the goods was less than the debt of appellants, wherefore the Avindinos sustained no loss. On the issue so made the court instructed the jury that if they believed that shortly after the sale of the goods under execution Mrs. Avindino purchased the same from Mrs. Levy for herself or herself and husband, and that the goods were, under such purchase, delivered to her as her property or as the property of herself and husband, and if the jury further believed that the amount so paid, with interest thereon and interest on the value of the goods from the time of the levy to the time of the sale under execution, was less than the amount of the judgment of Beck & Co. against Avindino, with interest thereon, then the jury should find for appellants, but that if the sum paid by the Avindinos to recover the goods, with interest, was greater than the amount of the judgment with interest, then on this issue the verdict should be for the appellees for the excess. The jury was further instructed, in the same connection, that if they believed that Mrs. Avindino did not purchase the goods from Mrs. Levy and thereby make the same her property, then the jury should find against appellants on the issue raised by their plea set out above.

No other charge was given on this issue, and the verdict shows that the jury found against appellants on their theory that the Avindinos, through Mrs. Levy, recovered the goods. Appellants requested a special charge, which was refused, to the effect that if the jury believed that the goods, after the sale under execution, were put back in the possession of Avindino or his wife, who got the use and benefit of same by paying out of the proceeds of the sales of the goods made, while in her possession, the price for which the goods were sold at the sheriff's sale, and that when she paid said amount the goods should be hers, then the jury should find for defendant. Complaint is made of the charge given on the ground that the same is confusing, and error is assigned to the refusal of the special charge. It is also insisted that the evidence required a finding by the jury in favor of appellants on the issue that the Avindinos recovered the goods for a less sum than the amount owing on the judgment. It was shown by the evidence that Beck & Co. bought the goods at the sheriff's sale for the sum of $530 and that the writ was credited with that sum; that Beck & Co., through their attorney, at once sold the goods to Mrs. M. Levy for the sum of $30 cash, and five notes for $100 each, the notes maturing monthly; that Mrs. Levy immediately turned the goods over to Mrs. Avindino, who opened a millinery business with the goods as her stock in trade, which business was conducted for more than a year by Mrs. Avindino, ostensibly as agent for Mrs. Levy. This business was carried on next door to another place of business where Mrs. Levy conducted a similar business in her own name. Mrs. Levy testified that immediately after buying the goods she sold and delivered the same to Mrs. Avindino for the exact amount

she paid for them, and did not charge her any interest, though the sale was made on credit. Avindino and his wife were dead when the case was last tried, but they had testified on a former trial and their evidence was reproduced. Mrs. Avindino testified that Mrs. Levy put her in charge of the goods to sell them out; that she had no interest in the goods after they were sold by the sheriff; that she was only agent for Mrs. Levy, who was sole owner; that Mrs. Levy gave her part of the profits on sales to live on for her service. Avindino testified to like effect. It appears from the testimony of Mrs. Buron, who is a daughter of Avindino and wife and one of the appellees, and who was 13 years old when the execution sale took place, and of Mrs. Russell, who was Mrs. Avindino's clerk, that after Mrs. Avindino took charge of the goods the business was conducted in her name as agent; that the business was carried on as before the levy, except that Mrs. Levy was sometimes about the store and got money from the proceeds of sales, the witnesses did not know how much; that Mrs. Avindino lived out of money taken in from sales of goods; that when new goods were bought Mrs. Levy was consulted. It was also shown that finally Mrs. Avindino's health broke down and the stock of goods was sold out in bulk; that the business was closed up, and that Mrs. Avindino died shortly thereafter.

We are of opinion, in view of the pleadings and evidence, that the refusal of the special charge was error. The charge given was substantially correct as far as it went, but did not present that phase of the case covered by the special charge. Under the charge given, the jury could find for appellants on the issue raised by their plea above set out only in the event they believed that Mrs. Avindino purchased the goods from Mrs. Levy and that the same were delivered to her as her property. Under the charge the jury may have found for appellees although they believed that Mrs. Levy sold the goods to Mrs. Avindino conditionally, that is, that the goods should be held by Mrs. Avindino as agent until Mrs. Levy was repaid the sum paid by her for the goods, and that when this was done the goods should then become the property of Mrs. Avindino. This is the theory presented by the special charge and is not covered by the main charge. The evidence raised the issue and appellants were entitled to have it submitted to the jury. While, as stated above, the main charge is substantially correct, it is not entirely free from criticism. The right of appellants to recover at all on the issue submitted is so combined with the statement of the measure of damages as to make it somewhat confusing to the average juror. We are not sure that the charge was properly understood by the jury. The evidence as to the right of appellees to a verdict on this issue is so unconvincing that we are not inclined to disregard even so slight an error.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*