PUTMAN v. COLEMAN et al. (No. 2426.)*

(Court of Civil Appeals of Texas. Amarillo. Oct. 14, 1925. Rehearing Denied Nov. 4, 1925.)

1. Acknowledgment ⬅56—Married woman not estopped, because she may commit perjury, to testify that she never appeared before notary making certificate of acknowledgment of deed.

Married woman *held* not estopped from testifying that she never appeared before notary making certificate of acknowledgment of deed to her separate property or homestead, because she might be guilty of perjury, as officer making false certificate from sinister motive would be under like temptation, and limiting her to other testimony would often destroy defense.

2. Husband and wife ⬅201—Wife's testimony held not to show representations binding her by delivery of deeds not acknowledged by her.

Testimony of married woman, claiming separate property and homestead rights in land conveyed to defendant by her and her husband, *held* not to show that she was party to original trade with defendant to extent of actively inducing latter to make it, so as to bind her by delivery of deeds to him, though not acknowledged by her.

3. Acknowledgment ⬅55(2), 56—Certificate conclusive in absence of fraud or imposition; false certificate that married woman appeared before notary is gross fraud permitting her to attack it.

Officer's certificate to wife's separate acknowledgment of deed is conclusive of facts stated therein, in absence of allegations and proof of fraud or imposition, and certificate falsely stating that she appeared before officer is such gross fraud as would permit her to attack it under proper allegations of petition in trespass to try title.

4. Acknowledgment ⬅56—Husband and wife ⬅138(3)—Wife signing deeds not bound by husband's representations not made in her presence, nor estopped to deny acknowledgment.

Wife merely signing deeds to land, in which she claimed separate property and homestead rights, with knowledge that they were to be delivered to grantee, *held* not bound by husband's representations not made in her presence, nor estopped to show that she never acknowledged same.

5. Trial ⬅194(10)—Charge that property was wife's separate property on certain date held erroneous as peremptory charge on controverted issue.

Charge that property for which wife sued was her separate property on certain date be-fore consummation of debt, in settlement of which defendant claimed property was conveyed to him by husband and wife, *held* erroneous as on weight of evidence and peremptory charge on controverted issue, where husband's deed to wife prior to such date did not describe all land in controversy and correction deed was recorded after transaction in which debt was created.

6. Appeal and error ⬅216(7), 230—Objection not made to charge in writing before it was given to jury not considered.

Objection not made to charge in writing at time and before it was given to jury cannot be considered.

7. Bankruptcy ⬅391(1)—Creditor pleading debtor's petition in bankruptcy, and showing that bankruptcy court acquired jurisdiction, not entitled to judgment for debt.

Creditor expressly pleading debtor's petition in bankruptcy, and showing that federal bankruptcy court acquired jurisdiction, cannot recover judgment for debt; it being presumed that such jurisdiction continues, in absence of proof that bankruptcy proceedings had terminated.

8. Bankruptcy ⬅391(1)—Bankruptcy court having acquired jurisdiction of debtor's affairs, state court cannot render judgment for amount of debt.

Bankruptcy court having acquired jurisdiction of debtor's business affairs, state court could not render judgment for creditor, for amount of debt, against debtor or latter's wife, who signed, but did not acknowledge, deeds to creditor in settlement of debt.

9. Pleading ⬅290(3)—Unverified plea of failure of consideration for deeds insufficient.

Exception to unverified plea of failure of consideration for deeds should be sustained.

10. Homestead ⬅181(3)—Husband and wife held not concluded from asserting homestead claim by moving to another state and husband's acceptance of and candidacy for offices therein.

Husband and wife *held* not concluded from asserting homestead by evidence of their having moved to and acquired residence in another state and husband's acceptance of offices of deputy sheriff and justice of the peace and candidacy for Legislature therein.

Randolph, J., dissenting in part.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Action by Jonnie M. Coleman and husband against J. A. Putnam. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Vickers & Campbell, of Lubbock, for appellant.

Jack M. Randal, of Memphis, and Robt. H. Bean and Bean & Klett, all of Lubbock, for appellees.

RANDOLPH, J. This suit was instituted by Jonnie M. Coleman joined by her husband,

M. M. Coleman, against J. A. Putman to recover a 60-acre tract of land in Lubbock county, Tex., by formal action of trespass to try title, and also by a "second count" in which the legal execution of certain deeds and certificates of acknowledgments thereto is attacked, also setting up separate property rights and homestead rights to the property in controversy. Upon trial the case was submitted to a jury by a general charge and also on special issues, and on the answers to such issues the trial court entered judgment for the plaintiffs. From that judgment appeal is had to this court.

The plaintiffs, one or both, were the owners of a 60-acre tract of land in Lubbock couney. They had their home on this land and lived on it until the fall of 1918, at which time they moved to New Mexico, where they purchased a small ranch. A short time afterwards they purchased the defendant's cattle and leased his ranch which adjoined their place. The cattle were purchased for a consideration evidenced by notes payable to the defendant, a small cash payment, and the assumption of certain indebtedness to a New Mexico bank.

There are shown in the record, in the form of deeds, three instruments, one dated January 17, 1920, purporting to be acknowledged before M. M. Coleman, notary public for New Mexico, the second dated January 29, 1921, purporting to have been acknowledged before E. J. Baca, notary public for New Mexico, and the third dated August 26, 1921, each of which deeds purported on their face to be the deed of Jonnie M. Coleman, but the two last being signed and acknowledged, also, by her husband, M. M. Coleman, and naming J. A. Putman as grantee. These deeds the plaintiff in her petition attacks for various reasons. Two of these deeds describe the land in controversy, but the first named deed does not. Plaintiff also claims that such deeds in the form in which they are presented were made in consideration of the promise on the part of defendant to convey to the plaintiffs a section of land in New Mexico, which promise they allege he has failed to perform. The defendant claims that such deeds were intended to convey him the 60 acres in controversy to settle the balance of purchase money remaining unpaid on the cattle.

We will not make a statement of the pleadings or evidence in the case at this time, but will make such statements as are necessary in the consideration of the defendant's propositions submitted herein by him.

[1] The questions presented by appellant's first and second propositions are: That the uncorroborated testimony of Mrs. Coleman that she never acknowledged the deeds of January 29 and August 26, 1921, is not sufficient to impeach her acknowledgment affixed thereto, nor to overcome the testimony of the notary public that he took such ac-knowledgments. Mrs. Coleman testified that she signed the deeds, but she also testified positively that she never at any time went before the notary and never acknowledged them before him. Her testimony was corroborated by that of her husband.

It is true that these parties are interested in the land involved in this suit—that by belief in or by disbelief in their testimony the result of the case will be reached at the hands of the jury. It is certainly a temptation for them to swear falsely. It is also true that if an officer, from a sinister motive, should make a false certificate, he would be under a like temptation to perjure himself, rather than to plead guilty to so doing. Hence, to the mind of the writer, the temptation to commit perjury, the inducement to do so, is as strong in the one case as in the other. If such a fraud has been perpetrated and an officer has made a false certificate whereby a married woman stands in danger of losing her separate property, or homestead, when she had never appeared before such officer, she ought not be estopped from showing this because she might be guilty of perjury. To limit her to outside testimony would, in many cases, destroy her defense, as such examination is required by the law to be separate and apart from her husband and usually is in the privacy of the notary's office.

The distinction is drawn between the case of a married woman being permitted to impeach such a certificate where she has never in fact appeared before such officer, and where she has actually gone before the officer and he fails to do his duty in some respect. In the case of Wheelock v. Cavitt, 91 Tex. 682, 45 S. W. 797, 66 Am. St. Rep. 920, the Supreme Court of Texas lays down the rule that clearly makes this distinction. That court says:

"In this state the rule is firmly established that where a married woman who has with her husband signed a deed conveying her separate real estate appears before an officer authorized by law for the purpose of acknowledging the conveyance, and the officer fails to do his duty in taking such acknowledgment, but makes a certificate which shows a full compliance with the law, such certificate is conclusive upon the married woman in favor of an innocent vendee, who paid value for it without notice that the officer failed to perform his duty as required by law. Pool v. Chase, 46 Tex. 210; Kocourek v. Marak, 54 Tex. 205 [38 Am. Rep. 623]. Waltee v. Weaver, 57 Tex. 571. * * *

"But where it is shown that the married woman has not appeared before the officer for the purpose of acknowledging the execution of the deed, and no acknowledgment has been in fact made, she having in no way invoked the exercise of the officer's authority in that respect, the certificate, however formal, is not binding upon her, even in favor of an innocent purchaser and for value without notice. 1 Devlin on Deeds, § 532a; Breitling v. Chester, 88 Tex. 589 [32 S. W. 527]; Pickens v. Knisely, 29 W. Va. 1

[11 S. E. 932], 6 Am. St. Rep. 636; Cheney v. Nathan, 110 Ala. 254 [20 So. 99], 55 Am. St. Rep. 26; Grider v. Am. F. Mortgage Co., 99 Ala. 281 [12 So. 775], 42 Am. St. Rep. 58; Le Mesnager v. Hamilton, 101 Cal. 532 [35 P. 1054], 40 Am. St. Rep. 81; Michener v. Cavender, 38 Pa. 334, 80 Am. Dec. 486; Borland v. Walrath, 33 Iowa, 130; Donahue v. Mills, 41 Ark. 421; Williamson v. Carskadden, 36 Ohio St. 664; Meyer v. Gossett, 38 Ark. 377; Allen v. Lenoir, 53 Miss. 321; Johnston v. Wallace, ib [53 Miss.] 331 [24 Am. Rep. 699]; Mays v. Hedges, 79 Ind. 288."

See, also, Gary v. McKinney (Tex. Civ. App.) 239 S. W. 285; Yaseen v. Green (Tex. Civ. App.) 140 S. W. 824, 826.

Upon the very question discussed we do not think the case of Cockerell v. Griffith (Tex. Civ. App.) 255 S. W. 490, applies for the reasons stated later.

[2] But there remains, in this connection, for our disposition, the question as to whether or not Mrs. Coleman was guilty of conduct in the matter of the delivery of these deeds that would estop her from setting up her not having acknowledged the deeds. We think not, for these reasons: She testifies that she was induced to sign them by the promise of the defendant to deed her a section of land; that when he failed to make this deed she still relied on his doing so and on his promise to execute it when he got his patent to the land. She identifies the deed dated January 17, 1920. That is the deed which she acknowledged before her husband. She does not remember whether she gave it to the defendant or whether her husband did, but states that it is her impression that it was given to defendant at the ranch. She further testifies:

"It was all right for him to have this deed. I intended for him to have this deed. I intended to convey this land to Mr. Putman when I signed the deed; that was my purpose and intent. * * * As to whether or not I swore to it before my husband, will say I just signed it; he did not ask me anything about it. He was a notary public. I thought the deed was conveying the land to Mr. Putman."

As to the deed dated January 29, 1921, which, purports to have been acknowledged before the notary Baca, she testifies:

"During the latter part of January, 1921, Mr. Putman sent us a blank Texas form deed and wrote to my husband. I don't remember whether I saw the letter or not, but my husband told me what the letter was. He told me that the deed was not on a Texas form, but he did not say that Putman wanted a corrected deed, but wanted a new deed, and in pursuance to that I signed that deed. I do not remember whether my husband wrote it or not. I intended by that to give Mr. Putman a new deed to this 60 acres, and I intended to convey him this 60 acres by that, it is true. I knew of Mr. Baca at that time; had seen him and knew who he was when I saw him. He was a notary public, but I don't know whether he was a justice of

the peace, but I don't know when I was told that. At that time I understood that he was a notary public, but I didn't understand his being a justice of the peace at that time; I don't remember when he was a justice of the peace. My husband stated that he was going to mail this deed that I signed back to Mr. Putman; that is what I intended, that is true. I intended it to be mailed back to Mr. Putman, and I supposed my husband mailed it, but I don't know; but if he did, he did it with my consent."

As to the deed dated August 26, 1921, purporting to be acknowledged before the notary Mayo, she testified:

"The reason I signed that deed of August 26th is because Mr. Putman told me that if I was so afraid of him he would give me a blank deed, and when he gave me a blank deed I finally signed this deed, and I signed it there at my home at the ranch, and I didn't go to Magdalena before E. A. Mayo. I signed the deed there at home, but I don't remember whether my husband signed it then or not. I did not read the deed. I did not take it up and look at it, and did not know the contents of the deed. He told me it was conveying 60 acres of land out here. It was my purpose in signing that deed to convey that land to Mr. Putman. I don't know whether my husband signed it at that time or not. I signed that deed on August 26th. I don't remember how long I had had the deed from my husband to me at that time; he brought it back with him from Magdalena the 1st of August, along about that time. The reason he was in Magdalena is because he and Mr. Putman went in there to see Mr. Putman's lawyer and find out why his lawyer would tell my husband why he had not given me a deed to the land as he had promised. He said he was having a little trouble and would have to have some papers fixed up of some kind, but they said it was perfectly all right; that they would soon have it fixed. I don't remember whether I gave Mr. Putman both deeds at the same time, or not; and I don't remember seeing my husband give them to him. Suppose that is the exact deed that I signed. I don't know whether there has been anything done to that deed since I signed it, or not. I would not know it if there had been anything done to it, because I did not look it over. I don't know whether there was anything done to that deed or not; I didn't read it. If there was anything done to the deed after I gave it to my husband to give it to Mr. Putman, I don't know it, because I didn't read the deed. I did not read that deed of January 29th. I didn't read any of the deeds. I don't remember whether all of that was in the deed when I signed it or not. I wouldn't know if there had been any change in the deed after I signed it, because I didn't read it. I suppose I can read a little bit. As to whether or not on September 25, 1920, Mr. Putman sold all of his ranch equipment, including the cattle and horses, to my husband, will say that I understood they made a trade, but I don't know any particulars about it. I don't know where they fixed up that trade, whether there at my home or not. I didn't see them. Our family consists of my husband and myself. I don't know whether they fixed up the trade at our home, or not. I don't know whether those papers

were fixed up on my husband's typewriter, or not. I couldn't say whether it was written by him, or not. I think I was at home at the time all right. The reason I think I was there is because I hardly ever did leave the ranch, not often. I didn't know they were trading; I didn't know anything about it at all until my husband said they had made a trade."

We do not think that this testimony of Mrs. Coleman tends to establish such representations as to bind her by delivery of the deed.

Considering the case of Cockerell v. Griffith (Tex. Civ. App.) 255 S. W. 490, on this phase of the question, we are of the opinion that the facts in that case do not make that opinion applicable to this case. In that case, Mrs. Colburn, whose acknowledgment was attacked, had appeared before the officer; hence the officer's certificate was in due form; and under the rule laid down in the Wheelock Case, she would not be permitted to impeach the certificate.

[3, 4] Under the authorities cited above, it appears to the writer that the rule in Texas is that the certificate of the officer to the separate acknowledgment of the wife to a deed is conclusive of the facts stated in the certificate, except in cases where there are allegations and proof of fraud, or imposition. This being the rule, the certificate of the officer, stating that Mrs. Coleman appeared before him, if it was not true, was such a gross fraud as would permit her, under the allegations of her petition, to attack it. It will be remembered that this suit is brought by Mrs. Coleman in her own right, and that she is joined pro forma only by her husband. The evidence does not disclose that she was a party to the original trade to the extent of actively inducing the defendant to make it. This being true, her act in handing him the deed, if she did, does not bind her in such manner as to supply the necessity of a legal acknowledgment. As to the deeds purporting to be acknowledged before Baca and Mayo, no conduct or representations on her part are shown; she simply signed the deeds knowing that they were to be delivered to Putman. If her husband made any representations, not being made in her presence, she is not bound by such representations. The very purpose of the statute requiring the separate acknowledgment of the wife is to protect her against a rascally or improvident husband who has influenced her against her will or judgment. We therefore overrule appellant's propositions Nos. 1, 2 and 3.

[5] For the purpose of a thorough understanding of the criticism leveled at the court's main charge and the requested special charge of appellees given in connection with the main charge we copy here:

"Gentlemen of the jury, you are charged that the property in controversy was on and prior to January 29, 1921, the separate property of the plaintiff Jonnie Mae Coleman: You are also charged that temporary absence from a homestead is not an abandonment thereof as a homestead. Bearing in mind the foregoing instructions, you will please make answer to the following special issues:

"Special issue No. 1. Did the plaintiff Jonnie Mae Coleman acknowledge the deed of January 29, 1921, before E. J. Baca, a notary public? Answer yes or no.

"Special issue No. 2. Did the plaintiff Jonnie Mae Coleman acknowledge the deed of August 26, 1921, before E. A. May, a notary public? Answer yes or no.

"Special issue No. 3. Did the defendant J. A. Putman agree to convey to plaintiff Jonnie Mae Coleman a section of land in New Mexico as consideration for the conveyance of the land in controversy to him? Answer yes or no.

"Special issue No. 4. At the time of the execution of the deeds in question had the plaintiffs removed from the land in controversy to the state of New Mexico with the intention to return to and continue the use of the land as their home? Answer yes or no.

"You are the exclusive judges of the credibility of the witness and the weight to be given to their testimony, but the law you will receive from the court in this charge, and such special charges, if any, as may be submitted to you. The burden of proof is upon the plaintiff to establish the negative of special issues Nos. 1 and 2, and upon the plaintiff to establish the affirmative of special issues Nos. 3 and 4. After the argument of counsel, you will retire, select one of your number foreman, etc."

Plaintiffs' requested special issue given by the court in connection with the main charge is as follows:

"In connection with special issues Nos. 1 and 2, of the court's general charge, you are instructed that in order for a deed to a married woman's separate property or the homestead to be valid, said married woman must voluntarily appear before a notary public, and said notary public must, in the absence of the married woman's husband, explain the instrument to her fully; and after said instrument has been explained to her she must state to said notary public that she signed the said instrument willingly, and must, in addition thereto, state to said notary public that she does not wish to retract said deed.

"Therefore, unless you find from the evidence that on January 29, 1921, Jonnie Mae Coleman voluntarily appeared before E. J. Baca, and that said E. J. Baca fully explained said deed of that date to her, in the absence of her husband, and that said Jonnie Mae Coleman, after said instrument had been explained to her, stated to said notary public that she had willingly signed said instrument and that she did not wish to retract it, you will answer special issue No. 1 in the negative.

"And unless you find from the evidence that on August 26, 1921, Jonnie Mae Coleman voluntarily appeared before E. A. Mayo, a notary public, and that said Mayo fully explained to her, in the absence of her husband, the said deed of August 26, 1921, and stated to said notary that she had willingly signed said instrument and that she did not wish to retract it, you will answer said special issue No. 2 in the negative."

This charge was objected to in due season on the ground that wherein the court instructed the jury that the property in controversy was the separate property of Jonnie Mae Coleman on January 29, 1921, same was a charge upon the weight of the evidence and assumes to be a fact a controverted issue. The record discloses that on June 6, 1919, the husband of plaintiff, Mrs. Coleman, executed a deed to his wife, which was duly recorded in the deed records of Lubbock county, Tex., on the 23d day of July, 1920. This was prior to the transaction between M. M. Coleman and defendant Putman, in which Putman sold his cattle to M. M. Coleman, and prior to the time, therefore, that any debt claimed by Putman to be due him was consummated. If such deed had conveyed the property in controversy, the question of its being the separate property of the wife, on the face of the record, could have been presumed by the court. Quarles v. Hardin (Tex. Com. App.) 249 S. W. 459. However, this deed was defective in description and did not describe all of the land in controversy. Later, on August 1, 1921, a correction deed was executed by Coleman conveying the property to his wife, and this deed describes the property in controversy and was recorded October 18, 1921, which was something near a year after the transaction between the defendant and Coleman in which the cattle debt was created. Hence there is nothing for the trial court to have based his instruction on. Such charge was not only on the weight of the evidence, but was a peremptory charge upon a controverted issue.

[6] Appellant's sixth proposition raises the question that the charge of the court is erroneous wherein he tells the jury that in the event they find that Mrs. Coleman never voluntarily appeared before Baca and Mavo, the notaries, if said notaries never fully explained the deeds to her, separate and apart from husband, or if she did not tell the notary that she willingly signed said deeds, such instructions were not "explanations and definitions of legal terms as shall be necessary to enable a jury to properly pass upon and render a verdict on such issues," but were for the purpose and had the effect to confuse the jury and to impress them that the wife must do many things before she has conveyed the land, and thus call for a general verdict for the appellees.

This objection was not made to the charge in writing at the time and before same was given to the jury: hence we cannot consider same.

The question presented upon the assumption in the court's charge that the land in controversy was the homestead of Mrs. Coleman, and the claim of Mrs. Coleman that said land was her homestead, is in our opinion not sustained by the evidence. On the contrary, the evidence showing that the plaintiffs had removed to New Mexico, had acquired a residence there, and the husband having accepted the offices of deputy sheriff and justice of the peace in that state, and having been a candidate for the Legislature of that state, renders it conclusive that the plaintiffs had abandoned their homestead in Texas. Reece v. Renfro, 68 Tex. 194, 4 S. W. 545; Jordan v. Godman, 19 Tex. 273, 275; Smith v. Uzzell, 56 Tex. 315; McElroy v. McGoffin, 68 Tex. 208, 4 S. W. 547.

[7, 8] The defendant claims that he is entitled to judgment, in any event, for his debt with lien on the land in controversy. This might be true as to a judgment for the debt only, if he had not put himself outside of any right to claim this relief. He expressly pleads the application of plaintiff M. M. Coleman to be declared a bankrupt and shows that the United States court in bankruptcy has acquired jurisdiction of his business affairs. This presumption, in the absence of proof that the bankruptcy proceedings has terminated, must be indulged by us. The bankruptcy court having acquired jurisdiction, the trial court had no jurisdiction to render a judgment in favor of defendant and against the plaintiff Coleman even for the amount of a debt. Certainly the defendant is not entitled to a judgment against the married woman, under the proof in the case.

[9] The exception of defendant to the pleading of plaintiffs setting up failure of consideration should have been sustained. This pleading was not verified as required by law.

We have carefully considered all of appellant's propositions and assignments of error, and, except as herein indicated, find no error; but for the indicated errors, we reverse and remand the judgment of the trial court.

HALL, C. J., and JACKSON, J. [10] We concur in the disposition of the case by Associate Justice RANDOLPH, but we do not concur in the holding in the opinion that appellees were concluded by the evidence in the record from asserting a claim to the land as a homestead. White v. Epperson, 32 Tex. Civ. App. 162, 73 S. W. 851; Garner v. Black, 95 Tex. 125, 65 S. W. 876; Wiener et al. v. Zweib (Tex. Civ. App.) 128 S. W. 699; Armstrong v. Neville (Tex. Civ. App.) 117 S. W. 1010; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 165; Crowder v. Union National Bank of Houston (Tex. Com. App.) 261 S. W. 375.