## SIDON HARRIS v. G. S. MATTHEWS ET AL.

### Decided June 22, 1904.

**1.—Homestead—Rural or Urban.**

Evidence considered and held to support finding that plaintiff seeking to enjoin sale of any portion of four adjoining tracts of land, situated within the corporate limits of a city, but claimed by him as a rural homestead, was entitled only to the urban homestead; that two of such tracts were not so used as to constitute a part of such urban homestead; and his urban homestead exceeded the value of $5000 when these were acquired.

**2.—Same.**

The situation within corporate limits, the subdivision and occupancy of surrounding property, the schools, fire protection, and light and water supply furnished by the municipality, and other circumstances considered in determining a homestead to be urban and not rural in its character.

**3.—Urban Homestead—Burden of Proof.**

It is questioned whether plaintiff seeking to enjoin sale of his alleged homestead on the ground that it was a rural one had not the burden of proving it to be so.

**4.—Urban Homestead—Use—Value.**

Lands in town may be subject to sale either because not so connected in use with the home as to constitute part of an urban homestead, or as exceeding the value permitted at the time of their designation.

**5.—Homestead—Injunction—Right to Select.**

One seeking to enjoin sale of land on the ground that it was all his rural homestead and tendering no issue as to his right to select if not all exempt can not complain of a judgment dissolving the injunction as to a part of the property on the ground that it deprives him of his right of selection.

**6.—Levy—Pointing Out Property.**

One can not complain that real property was levied on without opportunity for him to point out personal unless he has done so at the first opportunity.

**7.—Assignment of Error.**

An assignment that the court erred in overruling a motion for new trial "because of the errors herein assigned," is too general.

Appeal from the District Court of Travis. Tried below before Hon. R. L. Penn.

*Sidon Harris,* appellant, in pro. per.

*D. A. McFall, W. P. Allen,* and *G. W. Allen,* for appellee.

EIDSON, ASSOCIATE JUSTICE.—This is an action instituted by the appellant to enjoin the sale of certain lots of land included within the corporate limits of the city of Austin, upon the ground that said lots constituted the rural homestead of appellant. The material allegations of appellant's petition are as follows:

"3. That plaintiff was married in 1882, and by said marriage is the father of seven children, all of whom are minors and live with him upon his and their homestead in Travis County, Texas, which homestead consists of a body of land of about 93 acres, being certain four original grants and surveys, for which letters patent issued by the government in about the year 1842, which join each other and are known and designated as 'Austin Military Outlots,' and were so described and designated in the said original surveys, grants and patents, being Nos. 6, 7 and 9 in division C and No. 1 in division X, the first men-

tioned containing 11 acres, the second 25 acres, the third 21 5-8 acres and the last one 34 3-4 acres. That plaintiff purchased No. 7 in 1894, No. 1 in 1899 and Nos. 6 and 9 in 1900, the deeds thereto to him being in his own individual name. That plaintiff and his family first went upon said premises January 1, 1895, the residence being in the southwest corner of said outlot No. 7, which lies joining No. 1 on the north. That Nos. 6 and 9 join No. 7 on the east. That when plaintiff purchased Nos. 6 and 9, in 1900, he at once placed them in one inclosure with No. 7 and they so remain now. That No. 1 was inclosed as a pasture when he purchased it in 1899 and so remains now. That he uses all of said land for pasturage for his milk cows and saddle, work and stock horses, owned and used by himself and family, and also gets off of said outlots 6 and 9 and outlot 1 all firewood used by himself and family. He also sells wood taken from said three outlots, the proceeds of which go to the support of his family. He also pastures stock upon the entire premises, for hire, which also contributes to the support of his family. He cultivates about 10 acres of said land, and has had about 20 acres grubbed the past two years preparatory for cultivation.

"That all of the four outlots have been occupied, used, claimed and held by plaintiff, and his said family, as their bona fide rural homestead, continuously ever since the said dates plaintiff so purchased them. That No. 1 is in front of plaintiff's dwelling house, about 150 feet distant therefrom.

"That none of said outlots have ever been in any part, or respect, subdivided, but remain wholly undivided just as they were originally surveyed and patented by the sovereignty of the soil some 60 years ago. That a vacant strip of land 60 feet wide was left by the government on the west side and north side of said outlot No. 1, supposedly for public highway purposes; also on the east and south sides of No. 6 and on the east and north sides of No. 9. That the said vacant strip north of No. 9 has been for years wholly inclosed in a pasture and never used as a highway; and the said vacant strip south of Nos. 6 and 7 is impassable for vehicles, and has been for years, on account of a creek and deep ravines crossing same. That in about 1891 the city of Austin by legislative enactment, while enjoying a 'dam boom,' extended its corporate limits so as to embrace a vast amount of agricultural and farm lands, a part of which are said four outlots, constituting plaintiff's homestead, as aforesaid; practically all the lands joining them on the north and east are still used as farms and pastures, as also is much of them on the west and south of his said homestead.

"That no streets or blocks or subdivisions of any kind of any land in the locality of plaintiff's said homestead have been made since the extension of said city's corporate limits. Nor has said city ever evidenced any act of supervision over the said vacant strip between No. 7 in division C and No. 1 in division X, as a street, the same being untravelable, as aforesaid.

"Plaintiff has always exercised private control of said strip. Nor has the city ever worked or repaired any road contiguous to any part of plaintiff's said homestead, to plaintiff's knowledge. There are some blocks and streets just west of No. 1, but same existed just as they are when said extension of city limits was made. There has been no material change in the circumstances, conditions and surroundings of. this property since said extension took it into the corporate limits of said city.

"3. That on May 13, 1903, in this court, said defendants C. P. Scrivener, 'Special Agent for the said Northwestern Life and Savings Company of Des Moines, Iowa,' obtained a judgment against this plaintiff, Sidon Harris, for $595.33 and interest and costs, and on June 9, 1903, caused an execution to issue thereon against plaintiff for said sum, which execution said C. P. Scrivener and W. P. Allen caused to be levied by G. S. Matthews, as sheriff aforesaid, on plaintiff's said homestead, composed of said four tracts of land above described, on June 18, 1903, as plaintiff's property, and the same to be advertised for sale on August 3, 1903, under said execution levy to satisfy said judgment and execution, the said Scrivener and Allen claiming to own an interest in said judgment, which was a purely personal one, no lien existing upon any of plaintiff's property to secure its payment.

"That on August 3, 1903, upon application of plaintiff, and upon his original petition herein filed on said date, the Hon. George Calhoun, Judge of the Fifty-third Judicial District of Texas, granted a writ of injunction restraining the sale of said property under said execution levy and advertisement, until the further orders of this court be made, which writ was duly issued and served, returnable to this court, and is duly observed by defendants. But unless further restrained by a perpetual injunction, said defendants will further levy upon and advertise and sell plaintiff's said homestead or parts thereof under execution or venditioni exponas, issued upon said judgment to satisfy same, which acts would cast a cloud upon plaintiff's title thereto, and irreparably injure him, rendering the said property unsalable and compelling plaintiff to resort to expensive and annoying litigation to remove the cloud upon his said property. That plaintiff is without adequate legal remedy or relief in the premises.

"That such levy was made without plaintiff's knowledge. That no opportunity was given plaintiff to point out property, although he has been in Travis County, in Austin, every day since said judgment was rendered and then had property subject to execution in Texas, some of which was personal property in said Travis County. No demand was ever made of him for payment of said judgment or execution, and he know nothing of the issuance of said execution, until notified that his said homestead had been levied upon and advertised for sale, as aforesaid. That said levy was made spitefully by defendants to injure and unnecessarily annoy plantiff, and not as a bona fide lawful effort to collect said judgment.

"Wherefore, plaintiff prays that the injunction granted by the Hon. Geo. Calhoun, as aforesaid, be perpetuated, and defendants prohibited and restrained from making any levy of any writ upon any part of said property to satisfy said judgment.

"Plaintiff also prays that in the event this court should dissolve, in whole or in part, said injunction, that this court retain control, by proper order, of the sale of all and any part of said property, so that plaintiff can be protected upon appeal, from a sale of any part of his said property, until such appeal is finally determined in the appellate court of last resort, upon the giving of an approved bond, to be fixed by this court.

"And the plaintiff further prays as in his original petition and for costs, and for all equitable relief he may be entitled to in the premises, etc."

Appellees G. S. Matthews and W. P. Allen answered as follows:

"Come G. S. Matthews and W. P. Allen, and with leave of the court file this their first amended original answer, in lieu of their original answer filed herein on October 5, 1903, and thereupon:

"Defendants except to the petition of plaintiff and say the same is insufficient in law to require them to plead thereto, and of this they pray judgment of the court. .

"Specially answering, these defendants say that they have no interest in the subject matter of this suit, further than that the said G. S. Matthews, as sheriff of Travis County, was directed to levy upon and sell the property described in plaintiff's petition, and that the said W. P. Allen, as attorney for the Northwestern Life and Savings Company, and Chas. P. Scrivener, agent, had, at their instance and request, directed the sheriff to levy upon the property described in plaintiff's petition; that he acted as attorney for said parties and is not a party to the execution or the judgment upon which same was issued. Wherefore, they pray they be dismissed with their costs."

Appellees Northwestern Life and Savings Company and Charles P. Scrivener, agent, answered as follows:

"Come the defendants herein, the Northwestern Life and Savings Company of Des Moines, Iowa, and Chas. P. Scrivener, agent, and with leave of the court file this their first amended original answer in lieu of their original answer filed in this cause on October 5, 1903, and thereupon:

"1. Defendants except to plaintiff's petition, and say the same is insufficient in law, and of this they pray the judgment of the court.

"2. Defendants specially except to so much of said petition as seeks to avoid the levy of the execution sought to be enjoined herein on the ground that the said Harris has other property in this State subject to execution, for the reason that he fails to point out and specify the said property, giving its location and description, so as to enable these defendants to subject it to their levy, and of this they pray the judgment of the court.

"Answering, defendants deny each and every allegation made by plaintiff in his petition and demand strict proof of same.

"Specially answering, these defendants say that if any portion of the property levied on by virtue of the execution sought to be enjoined is the homestead of the said Sidon Harris, that it is outlot No. 7 in division C of the city of Austin, and as to this portion these defendants disclaim, and are willing to confess that same is the homestead of the said Harris, and they say that the said Harris purchased this property, outlot No. 7, division C, on the first day of December, 1894, from Lewis C. and Sallie E. Ryan and paid therefor the sum of $10,000; that said property was then well and reasonably worth the sum of $6000, exclusive of all improvements thereon ever since the said first day of December, 1894, and is now so worth the sum of $6000 exclusive of all improvements thereon; that upon the purchase thereof as before set out of said outlot No. 7, division C, the same became on the said first day of December, 1894, the home and homestead of the said Sidon Harris, and has continued to be his home and homestead; that the same is an urban homestead, and has been an urban homestead since the date of its purchase on the first day of December, 1894, that it is situated within the city limits of the city of Austin, and was so situated when it was purchased by the said Sidon Harris as before set out; that it is so regarded and used by the said Sidon Harris and has been so regarded and used by him ever since the date on which he purchased same; that in a deed made by the said Sidon Harris to Mrs. Matilda Christian on February 23, 1899, the said Harris specified locally, designated and elected said outlot 7, division C, as his homestead, and particularly the southwest corner thereof, all of which will more fully appear from the deed records of Travis County, in book 154, page 415; that on July 16, 1900, the said Sidon Harris purchased from D. S. Ross and A. J. Brown outlots Nos. 6 and 9 in division C of the city of Austin, less three-eighths of an acre, for the sum of $1305; that on February 23, 1899, the said Sidon Harris purchased from Mrs. Matilda Christian, for the sum of $7500, outlot No. 1 in division X of the city of Austin; that outlot No. 1, division X, is separated from outlot No. 7, division C, by a street of the city of Austin, and is not used as a homestead by the said Sidon Harris; that outlots 6 and 9, division C, are a great distance from the residence of the said Harris and are not used as a homestead by the said Sidon Harris; that the said Sidon Harris enjoys on the said outlot No. 7, division C, as his homestead, the rights, privileges and immunities of urban residents; that the water mains of the city of Austin run to said place and that thereby he is supplied with water; that the fire department of the city of Austin respond to calls in and about his said residence; that the street department repairs the streets in and about the above described property and the city of Austin polices same; that each of the pieces of property above referred to are in the city limits of the city of Austin, and were so within said limits when purchased by the said Sidon Harris, that

said outlot No. 1, division X, and said outlots Nos. 6 and 9, division C, are not portions of the homestead of the said Sidon Harris, but are subject to levy and sale under execution.

"Defendants further say that by reason of the levy of the execution sought to be enjoined, they have acquired and have a valid lien upon outlot No. 1, in division X, and outlots Nos. 6 and 9 in division C of the city of Austin for the satisfaction of their debt set forth in said execution, and they pray the court to foreclose said lien upon said property or so much thereof as may be necessary to satisfy said claim and to order same sold, and that they be quieted in the right to same as against the homestead exemption claim of the said plaintiff, and that the injunction herein be not perpetuated as to said outlot No. 1, division X, or outlots Nos. 6 and 9, division C, but as to these it be dissolved, and they pray to recover their costs and for general relief."

Appellant by supplemental petition replied to appellees' answer as follows:

"By leave of court plaintiff files his first supplemental petition and replying to defendants' answers filed October 12, 1903, says:

"The same are not properly verified by affidavit, and do not present any sufficient reason why the injunction granted in this cause should not be perpetuated in toto, and of this he prays judgment, etc.

"That he specially excepts to that part of said answer in which defendants seek to fix and designate his homestead upon outlot 7 and subject all the other outlots joining outlot 7, levied upon, to sale pursuant to said levy, because there is no recognized rule of law or equity in this State for such procedure were defendants entitled to the relief they seek. Furthermore, they fail to show or allege any right to such equitable relief as prayed for (the setting aside outlot 7 as a homestead and subjecting by foreclosure of alleged execution lien upon the excess of outlots levied upon), and do not show that plaintiff in this cause (defendant in said execution) was given any opportunity to point out property to be levied upon or that he had no other property upon which said execution could have been lawfully levied. And he therefore prays for judgment, etc.

"Answering the allegations of defendants' answers he says:

"1. That the so-called 'street of the city of Austin' which bounds outlots 7, 6 and 9 on the south and outlot 1 on the north, is simply a vacant strip of land 60 feet wide left there by the government when, in about 1840, said outlots were located, surveyed and platted by said government out of its public domain and sold and patented as platted to individual purchasers thereof from said government. That said so-called street has never received any recognition as a street by the city of Austin and is not travelable for vehicles of any kind, and is kept open by plaintiff for his own convenience and use. That the so-called streets on the east and west of plaintiff's premises are of the same origin, vacant strips of public domain, and have never been 'worked' by the city since plaintiff first purchased any part of said premises in 1894.

"2. That if plaintiff made any designation of outlot No. 7 as his homestead, it was prior to his acquisition of the other outlots in question, and was done incidentally in conveying three houses and lots to Mrs. Christian to waive any claim of homestead right to said houses and lots and for no other purpose. That afterwards, as he acquired outlots 1, 6 and 9, he did so for the purpose of adding them to his homestead which he needed for the comfort, conveniences, necessities and support of himself and family, and has ever since used them all for the use, support and convenience of his family, all of which was well known to defendants prior to and at the time they made the unlawful, willful and malicious levy as complained of in his original petition. That outlots 6, 7 and 9 are all in one inclosure. That outlot 1 is in one inclosure and is situated within a few yards of plaintiff's residence.

"3. That plaintiff laid at his own expense 740 feet of water main to get water to his yard, the city refusing to make such extension.

"4. That the city does not furnish pressure sufficient to be of any protection against fire at plaintiff's residence.

"5. That police are never seen upon or about plaintiff's premises, except when off duty, hunting and trespassing thereon.

"6. That his premises are rural in every particular, associated with farming, cow-punchers, dairies, hog ranches and golf links, far from the madding crowd. Wherefore, he prays as in his original petition."

Appellant, whose testimony constituted the entire evidence adduced upon the trial, except some documentary testimony which will be mentioned later, testified as follows:

"I am the plaintiff in this case. I was married in 1882, and by that marriage am the father of seven children, all of whom are minors and live with me at my home in Austin, Travis County, Texas, which is upon the land which is involved in this proceeding. This land consists of four tracts; the first tract being outlot No. 7, contains 25 acres; the second tract, outlot No. 1, contains 34¾ acres; the third tract, outlot No. 6, contains 11 acres; and the fourth tract, outlot No. 9, contains 21⅝ acres. These tracts are known as Austin Military outlots. No. 1 is in division X and Nos. 6, 7 and 9 are in division C of said Military outlots. They are original surveys as patented by the government, about sixty years ago. In the said original surveys a strip of 60 feet wide was left on the west side of outlots Nos. 1 and 7 and on the east and north of No. 9, and on the south of No. 6; also between Nos. 1 and 7."

Plaintiff here offered in evidence a map of the city of Austin, a portion of which shows his property and contiguous property.

"All of the property belonging to me shown upon this map or plat was not included in the corporate limits of the city of Austin until May 1, 1891, when said limits were extended by a legislative enactment so as to include a great deal of country property, farms and pastures. There have never been any changes in the condition and sur-

roundings of any of my property since the city limits were extended in 1891, except the house that I first lived in when I moved upon the property on the first of January, 1895, was burned down and I subsequently built a new one, which is still standing. There have never been any subdivisions made of my property since 1891, no streets or alleys laid out through it. The strips between the tracts left by the government are just as they were prior to 1891. Those running north and south are used as roads just as they were prior to 1891. The strip running east and west, north of No. 9, is inclosed in my pasture and has been for years. That between Nos. 7 and 1 is impassable a portion of the distance for vehicles, owing to the creek and deep ravines crossing it not having culverts or bridges across them, the banks being high, steep bluffs. It is used as a road on the east side of the creek by a few colored people who live on the northwest corner of outlot No. 5. The city has never, to my knowledge, supervised or worked said strips as streets nor in any way recognized them as streets that I know of. None of the land shown on this map or plat has ever been subdivided into blocks, streets or alleys, except that portion shown to have been so subdivided and Hyde Park, all of which was subdivided prior to 1891. There are two streets open in Grooms' addition east and west and one north and south, and this is in the south end of Grooms' addition, where there are perhaps a dozen residences, all of which, except two or three, were there prior to 1891; the central and northern part of Grooms' addition are woodlands and fenced with barbed wire and used as pastures. All the land directly west of my home and north and east of outlots 6, 7 and 9 are pastures or farms, having only a few houses. Outlot No. 4, as shown on the plat, is all open woodland. Tract No. 5 has three small fields on it and three houses and about one-half dozen negro shanties in the northwest corner. Outlot No. 8 is used for a dairy. Outlot No. 9, division X, adjoining my land on the southwest, is a pasture inclosed by a barb-wire fence. Outlet No. 10 is open woodland. I bought outlot No. 7 in December, 1894, and moved my family upon it January 1, 1895, moving into the dwelling house which stood on the southwest corner of that tract. I lived in that house with my family until it burned in 1897. I at once rebuilt it, and have lived in the new house built upon the site of the old one with my family ever since. In February, 1899, I bought outlot No. 1 in division X from Mrs. Christian. I traded her three residences in the city as part consideration, and in making the deed to her for those three houses I designated lot No. 7 in division C as my homestead, at which time I owned no other property in Travis County, except said three houses. I afterwards on the same day got from her a deed to outlot No. 1, division X, and at once took possession of this tract. In 1900 I bought outlots Nos. 6 and 9 in division C for $40 per acre, and at once placed them in an inclosure with No. 7, and ever since then have kept outlots Nos. 6, 7 and 9 in division C all in one inclosure, except on the north side I have a small field in cultivation, which is

fenced off to itself, and have about ten acres in the south side, including my house fenced off, which is also in cultivation, the balance being used for pastures. No. 1 in division X was inclosed when I bought it and I have continuously used it as a pasture for my horses and horses pastured for hire, and for firewood purposes, it being heavily timbered in places. I have had it grubbed during the past year preparatory to cultivating it, as I have also done Nos. 6 and 9 in part. I cultivate from ten to fifteen acres on 6, 7 and 9, and use the balance of all of them for pastures for my cows and horses and for firewood. I also sell some wood and pasture horses and cows thereon for hire, the proceeds of all of which is used for the support of myself and family. The deeds are all to me in my individual name, and I own no other land in Travis County, Texas. I bought all of these four tracts for homestead purposes and have continuously lived upon and used all of them in the manner indicated, and none of them have ever been subdivided since I acquired it. The city limits are about one-fourth to one-half of a mile north and northeast of my property. All the land between my land and the city limits on the north and northeast are farms or pastures, the golf links being upon a portion of it.

"Cross-examination: I vote in the city elections of Austin, and have voted ever since I moved on the place in 1895. I send my children to the public schools of the city. The fire companies respond to fire alarms at my home. I have electric lights at my house, which are furnished by the city's plant. I also have water which is furnished by the city. I had the water main, 740 feet, laid at my own expense, the city refusing to lay it. Since I laid this main, however, the city has made reductions in my water bill for the cost of laying the said 740 feet of main; the city has made several extensions of its water main in this way to persons outside of the city limits. I never see any police on duty in my neighborhood. I pay city taxes on my property and render it for taxes to the city. Hyde Park is about one-half to three-quarters of a mile northwest and west of my place. It was subdivided into lots and blocks and streets before it was taken into the city in 1891. Many houses have been built there since then; perhaps there are as many as fifty or seventy-five dwelling houses in Hyde Park. The improvements on outlot No. 7 when I bought it were of the value of $6000. When I bought No. 1 in division X I think it was worth what I gave for it, $7500; $3000 of this was in trade and $4500 in notes. There were no improvements on this tract when I bought it, except a fence, worth not over $200. Shortly after that the dam on the Colorado River broke, and I do not think this land is worth one-half of that. When I bought lot 1, division X, lot 7, division C, without reference to improvements was worth $2000. I bought outlots Nos. 6 and 9 in 1900 for $40 per acre, and I think it was worth that sum. The property is assessed for city taxes as follows without improvements: 6 and 9 at $900; 7 at $1500, and 1 at $2000.

"Defendants' Evidence.—The defendants offered in evidence the following deeds:

"First.    Deed to Sidon Harris by L. C. Ryan and wife to outlot No. 7, division C, of Austin Military outlots, containing 25 acres, consideration stated $10,000, dated December 1, 1894, recorded in December, 1894.

"Second.    Deed to Sidon Harris by Matilda Christian to outlot No. 1, division X, of Austin Military outlots, containing 34¾ acres, reciting as a consideration $7500, dated February 23, 1899, and duly recorded same day.

"Third.    Deed to Sidon Harris by A. J. Brown and D. S. Ross, outlots Nos. 6 and 9, division C of Austin Military outlots, first containing 11 acres and the second 21⅝ acres, reciting a consideration at $1005, dated July 16, 1900, recorded same month.

"Fourth.    Deed by Sidon Harris to Matilda Christian, conveying certain property in the city of Austin, dated February 23, 1899, said deed reciting that Sidon Harris had 'homestead in southwest corner of outlot No. 7, division C, of the city of Austin.' "

The trial was had before the court without a jury, and the court perpetuated the injunction as to outlot No. 7 in division C of the city of Austin, and outlot No. 1 in division X of said city, and dissolved said injunction as to outlots Nos. 6 and 9, in division C of said city; and further decreed that appellee C. P. Scrivener, as special agent for the Northwestern Life and Savings Company of Des Moines, Iowa, recover of appellant the sum of $595.33, with interest thereon from the 13th day of May, 1903, at 6 per cent per annum, and that the execution lien of the said appellee on said outlots Nos. 6 and 9 in division C of the city of Austin be foreclosed to satisfy same.

*Opinion.*—We find that the testimony in the record supports the judgment of the court below in holding that the property levied upon was situated within the corporate limits of the city of Austin, and that the same was urban property.

We also find that the testimony supports the judgment of the court in holding that lot 7 in division C and lot 1 in division X of the city of Austin constituted the homestead of appellant at the date of the levy of the execution complained of; and that lots 6 and 9 in division C constituted no part of said homestead at said date. We further find that the testimony supports the judgment of the court below in holding that lots 7 and 1 at the time of their designation by appellant as his homestead, and at the date of the levy of said execution, were of the value of $5000, exclusive of improvements thereon.

Appellant's first assignment of error contends that the court erred in holding that any part of the property involved in this suit was subject to execution sale, because, as he contends, the undisputed evidence conclusively proves that it is all parts and parcels of appellant's homestead, and that it is not an urban homestead. We do not agree with

appellant in this contention. We think there is sufficient testimony in the record to justify the action of the court in holding that the property upon which the homestead of appellant is situated is urban. While the fact that the property upon which the appellant established his home was at the time of such establishment embraced within the corporate limits of the city of Austin may not be of controlling importance in determining whether or not it was urban, such fact is potent evidence to be considered in connection with the other evidence in the case on the issue as to whether such property was urban or rural.

In order to constitute the lot or lots upon which the homestead is located a part of the city, it is not necessary that it should have been originally surveyed or platted by the city. It is sufficient if such lot or lots were recognized as a part of the plat or plan of the city; and it is unimportant that such lot or lots do not conform to the dimensions or shape of lots generally in the platted part· of the city, if their use, controlled by the city, and surroundings, impress them with the urban character. The conditions and surroundings of this property, according to the testimony of appellant, and as shown by the plat introduced in evidence, made the same urban at the date it was levied upon by virtue of said execution. Laucheimer v. Saunders, 8 Texas Ct. Rep., 479.

All the territory on the south and west of appellant's homestead is platted into blocks, lots and streets, and that on the south practically occupied by residences, and there are some residences on the west. The city limits are about one-fourth to one-half a mile north and northeast of appellant's property. The golf links are on a portion of this land between appellant's and the north and northeast limits of the city. This land being conceded to be within the corporate limits of the city, the establishment of golf links upon same certainly would not be considered a rural use of the land.

Appellant, prior to the levy of the execution, designated lot 7 as his homestead, and in his supplemental petition claims that he did this incidentally in conveying three houses and lots in the city of Austin to Mrs. Christian, to waive any claim to homestead rights to said houses and lots. If lot 7 was not urban property there was no reason for this waiver, as the lots to which the waiver was made could not have been any part of a rural homestead. Hyde Park, which is embraced within the limits of the city corporation, is one-half to three-fourths of a mile northwest and west of appellant's property, and it is subdivided into blocks, lots and streets, and was before it was taken into the city corporation by the legislative enactment above mentioned. Many houses have been built there since, and there are as many as fifty or seventy-five dwelling houses in Hyde Park, which practically surrounds appellant's property on the northwest.

Appellant has all the conveniences and protection that a municipal government affords; his children attend the public schools of the city; he votes in the city elections; the fire companies respond to fire alarms at his house; he has electric lights at his house furnished by the city's

plant; he has water which is furnished by the city. While he testifies he never sees any police in his neighborhood, it may be that their absence is accounted for by the peculiarly law-abiding character of his neighborhood, and it does not necessarily follow that he would be without police protection in the event it was at any time needed.

Appellant's second assignment of error contends that if the court below was correct in holding that his homestead was urban, it erred in holding that any part of it was subject to execution sale.

In his third assignment of error he complains of the holding of the court that lots 6 and 9 form no part of appellant's homestead; and in his fourth assignment of error he contends that the court erred in holding that said lots 6 and 9 were subject to execution sale, as the excess of value of an urban homestead. Under said second, third and fourth assignments appellant submits this proposition: "The burden of proof is upon appellees to establish that appellant's homestead is urban and exceeds $5000 in value, exclusive of improvements at the date of the purchase of tracts 6 and 9, in July, 1900. This they failed to do."

We are not disposed to agree with appellant in said proposition. He having sought equitable relief from the levy of the execution, solely upon the ground that the property was exempt as a rural homestead, and the proof showing that at the time said homestead was established the property was included within an incorporated city, we are inclined to think the burden was on him to show that the property was rural. But, conceding that the burden was on the appellees to show that the property was urban, we think the testimony in the record was sufficient to show it. There was sufficient testimony to justify the court in holding that lots 6 and 9, according to their use, constituted no part of appellant's homestead; and if it so held, it was unnecessary to consider the question of excess in value. The use made of the land may determine its character, as to whether it is homestead or not. Andrews v. Hagadon, 54 Texas, 571; Methery v. Walker, 17 Texas, 594; Houston & T. C. Ry. Co. v. Winter, 44 Texas, 611; Pryor v. Stone, 19 Texas, 37; Waggener v. Haskell, 13 Texas Civ. App., 630.

However, if the court held that lots 7 and 1 were of the value of $5000, exclusive of improvements, at the time of their designation as his homestead at the date of the levy of the execution, such holding was not without evidence to support it. Appellant's testimony and the considerations recited in his deeds show that these lots, without improvements, cost him more than $9000; and while he testified that when the Austin dam broke they were not worth one-half of that, he does not testify what they were worth at the date of the levy of the execution; and he being a party at interest, the court was not bound to accept his opinion as to the depreciation of value by the breaking of the Austin dam, if it was deemed inconsistent with the other testimony upon that issue.

Appellant in his fifth assignment of error contends that if his homestead be held to be urban, still the court erred in arbitrarily disregard-

ing a debtor's rights to select out of an urban homestead the part he may choose to retain as his homestead, in cases where its excess of constitutional value is established.

We do not regard this assignment as well taken. Appellant in his pleadings rested his right to relief solely upon the ground that the property was his rural homestead, and did not suggest to the court in any manner that he desired to select any particular part of the property in controversy as his homestead, in the event the property was held to be urban. Hence we think he has no right to complain of the action of the court. Further, appellant in his motion for a new trial does not set up that if he had been given the right to select the lots he desired to retain for his homestead, he would have selected different ones to those or either of them decreed to him by the court. Moreover the testimony was sufficient to justify the court in holding that appellant in the manner of his use of lots 6 and 9 had not impressed upon them the homestead character, and that being the case, the appellant would have no right to select property not used by him for homestead purposes.

Appellant's sixth assignment of error complains that the court erred in rendering judgment against appellant for $595.33, and interest from May 13, 1903, and foreclosing execution lien upon tracts 6 and 9 for that amount, because appellees' answer is insufficient in its allegations for affirmative relief to sustain such judgment and foreclosure.

We are of opinion that there was no error in the action of the court in the respect complained of. Appellant by his pleadings was seeking affirmative relief in this case, and not appellees, hence the case of Mackey v. Wallace, 26 Texas, 529, cited by appellant, does not apply.

In his seventh assignment of error appellant contends that the court erred in sustaining appellees' special exception number 2 to that part of appellant's petition alleging that the levy upon his homestead was unlawfully, spitefully and willfully made, without demand for payment or for pointing out a levy being made of him, when he had personal property subject to execution in the said county, and was personally present there all the time.

There was no error in this action of the court below. Appellant's petition did not allege that he, at the first opportunity, pointed out or offered to point out personal property upon which to make the levy. Beck v. Avondino, 82 Texas, 314.

Appellant's eighth assignment of error is as follows: "The court erred in overruling appellant's motion for a new trial, because of the errors herein assigned, and which were duly presented therein." This assignment is too general, and is otherwise not in compliance with the rules of court, and therefore will not be considered. However, as has already been stated, we are of opinion the judgment of the court is supported by the evidence.

There being no error pointed out in the record, the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused November 28, 1904.