**WEITZMAN et ux. v. LEE.** (No. 2316.)

(Court of Civil Appeals of Texas. Amarillo.
April 23, 1924. Rehearing Denied
June 4, 1924.)

**1. Homestead ⬥181½—Abandonment of business homestead held for jury.**

On evidence that owner had executed ten-year lease and given lessee option to purchase property, that owner was insolvent and had gone to another state and was not in a position, and did not have sufficient credit, to resume business on such property, whether he had abandoned business homestead *held* for jury.

**2. Homestead ⬥161—Temporary absence because of ill health does not destroy homestead character.**

Debtor's temporary absence on account of his health or that of some member of family does not destroy homestead character.

**3. Evidence ⬥589—Court not required to accept uncorroborated testimony of interested party.**

In action involving question whether plaintiff had abandoned business homestead, the court was not required to accept his testimony that his absence was due to wife's health, where plaintiff did not corroborate evidence by producing wife or some one of his physicians.

**4. Equity ⬥427(3)—Chancellor not controlled by prayer for general relief.**

In equity cases, a prayer for general relief is as broad as the equity powers of a court, and the prayer does not control a chancellor in determining what relief shall be given, but he may grant such relief as is consistent with the issues raised by the pleading and supported by the evidence.

On Motion for Rehearing.

**5. Appeal and error ⬥832(4)—Party cannot on motion for rehearing question sufficiency of pleading for trial on theory in which party acquiesced.**

Where trial court and parties have placed a certain construction on a pleading in any degree susceptible of such construction and the case has been tried upon a theory so understood and acquiesced in, the pleader cannot question the sufficiency of his allegations by motion for rehearing in court of civil appeals.

**6. Appeal and error ⬥882(5)—Pleader cannot attack own pleadings on appeal.**

A pleader cannot attack his own pleadings on appeal.

**7. Homestead ⬥181(1)—Facts held to establish prima facie abandonment.**

Where owner discontinued business, executed a ten-year lease giving lessee option to purchase his business property, was insolvent and without credit, and moved to other state, there was a prima facie abandonment of the business homestead placing burden on owner of showing property exempt from execution in his action to enjoin sale on execution.

**8. Homestead ⬥205—Judgment debtor suing to enjoin execution sale waived homestead claim by failure to assert it in pleadings.**

Where judgment debtor suing to enjoin sale of property on execution could have asserted a homestead claim, but did not assert such claim in pleadings, the court will not give him one nolens volens, since failure to assert claim in pleadings is waiver of it.

**9. Homestead ⬥213 — Abandonment may be shown under general denial.**

In judgment debtor's action to enjoin sale of property under execution, his abandonment of the homestead could be shown under a general denial.

**10. Easements ⬥16 — Court in authorizing sale of portion of lot used for business purposes, and in holding other portion exempt because homestead, properly preserved easement.**

Where owner used a portion of a lot for residence purposes and other portion for a bakery, the court in denying injunction against sale under execution of portion devoted to bakery as being an abandoned business homestead, and in enjoining sale of portion devoted to residence as residence homestead, did not create easement by including in business homestead right to use passageway and driveway as against owner, but properly preserved easement created by owner himself in dedicating such passageway and driveway by user.

Appeal from District Court, Wichita County; H. R. Wilson, Judge.

Suit by Max Weitzman and wife against Homer Lee. Judgment for defendant, and plaintiffs appeal. Affirmed.

W. L. Scott and T. F. Hunter, both of Wichita Falls, and H. G. Hendricks, of Amarillo, for appellants.

Bullington, Boone & Humphrey, of Wichita Falls, for appellee.

HALL, C. J. On the 29th day of April, 1923, the appellee, a judgment creditor of appellant Weitzman, caused an order of sale to be levied upon lot No. 7, block No. 192, in the city of Wichita Falls, and was advertising said property for sale. May 18th the appellants, Weitzman and wife, brought this suit to restrain the sale of said lot, alleging that the property was their residence and business homestead; that the lot, exclusive of the improvements, did not exceed $5,000 in value, and that they had acquired no other homestead, and that the property was exempt to them under the Constitution and laws of this state. Lot 7 is an inside lot and fronts west 70 feet upon Travis street, running back 150 feet to an alley. Upon the front or west end of said lot Weitzman had constructed a brick building which fronts 66 feet upon Travis street, running back about 115 feet. On the north side of the building there is a plank walk, 4 feet in width, between the north wall of the build-

ing and the north line of the lot, extending back east the full length of the building. The brick building was constructed for and used as a bakery and is subdivided and partitioned into an office, flour room, cooling room, machinery room, oven room, packing and shipping rooms, and a loading shed. Upon the northeast corner of the lot adjacent to the alley is a five-room residence, 40 feet square, with continuation of the plank walk running from the front of the lot and dividing the residence from the rear end of the brick building. The residence fronts south. There is an open space, about 28 by 36 feet, in the southeast corner of the lot, which is covered with concrete; 14 feet of this space being used as the front yard of the residence, the remaining 14 feet next to the south line of the lot being used as a driveway for the delivery wagons to reach the rear end and loading shed of the bakery. By this action Weitzman endeavored to restrain the sale of the entire premises, asserting his claims as business and residence homesteads to the entire lot.

The trial was to the court without a jury and resulted in a judgment restraining the sale of the residence and of that part of the property covered by the plank walk, but refused to restrain the sale of the bakery and the driveway leading from the back of the bakery building to the alley. The judgment recites that—

The court "is of the opinion that Max Weitzman, after purchasing lot No. 7, block 192, original town site of Wichita Falls, Tex., in 1919, divided said lot in such a manner as to place on said premises a business homestead and a residence homestead both separate and independent from each other, by allowing a space on the north side of said lot, approximately 4 feet in width, and also a space on the east side of the business homestead, approximately 4 feet in width, and approximately 40 feet in length, as a passageway or walk, or a common easement for the use of both the residence and of the business homestead, and after placing on the east side of said lot or rear of the same a driveway from the alley street to the business homestead of approximately 14 feet in width, to be used for convenience of his business homestead, that by said means he completely separated his business homestead from his residence homestead, which is on the rear of said lot or the east end of said lot. And the court is of the further opinion that at the time of the levy of this execution the defendants had abandoned their business homestead, and that the injunction should be granted in so far as it attempts to sell any portion of said property known as plaintiff's residence homestead, and should be denied in so far as the levy and attempt to sell the same on the part of the defendants of the business homestead, which includes the brick building 64 feet, 4 inches wide, and 115 feet long, facing on Travis street, together with the ground upon which said building is situated, together with the easement of ingress and egress over the space 14 feet wide, in the rear of said building

to the alley street running through said block, said easement being 35 feet in length and 14 feet in width, together with the easement on the part of said parties to use the 4-foot space running from Travis street on the north side of said brick building down to the northeast corner of said brick building, and thence on the east side of said brick building to the easement of the driveway into said brick building."

A lease was introduced in evidence dated July 29, 1921, executed by the appellants to R. L. Nafziger, which conveyed to the latter all of lot No. 7, with the buildings thereon, as above described, "for a term of one year, beginning the first day of August, 1921, and ending the first day of August, 1922, for the sum of $4,200.00." The lease further recites, in part:

"At the expiration of the term hereby created, unless lessee elects to maintain said term under his option as hereinafter provided, or if default be made in the payment of the rent after the same is due, etc., * * * the lessors, or their agents, shall have the right to enter and take possession of the leased premises and the lessee agrees to deliver the same without the process of law, and this lease, at the option of the lessor, shall terminate. * * * This lease, at its expiration, or the expiration of any renewal thereof, at the option of the lessee, will be extended for one year at the same term rent and under the same conditions, unless the lessee gives at least 120 days' notice before the expiration of said lease of his intention not to renew the said lease and notice to be served upon or mailed by registered mail to lessors to their last known address. Said option for one-year periods to continue up to and including the year 1931, it being agreed between the lessors and the lessee that the lessee has the privilege of renewing this lease at the expiration of each annual period for another annual period, as above provided, and that said option is for any number of such periods, not to exceed ten, and up to and including the year 1931. It is further understood and agreed by and between the lessors and the lessee or his assigns, and as a part of the consideration for this lease, and the payment of the moneys herein specified, that the lessors will sell to the lessee, his assigns or the person he may designate, all of said real estate, buildings, plant and fixtures, free and clear of all incumbrances, guaranteeing good title in lessee or his assigns, executing all papers required by lessee or his assigns, at any time during the continuation of this lease or the renewal thereof, for the sum of $45,000.-00, upon notice to lessors of lessee's or his assigns' election to purchase under this option, and in the event the lessors are absent from the city of Wichita Falls, then a registered letter addressed to their last known address, signed by lessee, or his assigns, shall be considered sufficient notice from lessee or his assigns. to lessor of his or his assigns' election to purchase under this option."

[1] The case is before us upon 17 propositions. However, it will not be necessary for us to consider these propositions separately. The principal inquiry is whether Weitzman had abandoned his business homestead at

the time the execution in question was levied, and whether under ·the contract of lease with an option in the lessee to buy, and his admitted insolvency, the question of intent is material. He had executed an obligation to Nefziger, whereby the .latter has an option for 10 years of buying the lot at a stated price. Nefziger had gone into possession under this contract. Weitzman then left the state,. and while he had not acquired a homestead in Tulsa, for obvious reasons, it is, to say the least, persuasive evidence of an intention never to return and resume business in ·the property and the issue of abandonment under such circumstances becomes purely a question of fact. O'Fiel v. Janes (Tex. Civ. App.) 220 S. W. 371; Edmonson v. Blessing, 42 Tex. 596; Focke v. Sterling, 18 Tex. Civ. App. 8, 44 S. W. 611; De Hymel v. Scottish American Mortgage Co., 80 Tex. 493, 16 S. W. 311; Scott v. Parks (Tex. Civ. App.) 29 S. W. 216; R. E. Bell Hardware Co. v. Riddle, 81 Tex. Civ. App. 411, 72 S. W. 613; Kaufman v. Fore, 73 Tex. 308, 11 S. W. 278; Wynne v. Hudson, 66 Tex. 1, 17 S. W. 110. While a leasing of the property for 10 years, coupled with the possession of the lessee under a valid option to purchase during the term of the lease, may not in law amount to an abandonment, it is nevertheless strong evidence upon the issue against the lessor, which the court or jury may consider. Oppenheimer v. Fritter, 79 Tex. 99, 14 S. W. 1051. It is held in Wurzbach v Menger, 27 Tex. Civ. App. 290, 65 S. W. 679, that a renting for 10 years, is conclusive of abandonment.

Appellant insists that it is and has been his intention to return to the property‑ as soon as his wife had undergone a surgical operation and her health permitted. Although he had been in Tulsa for several months, where he says he went to have certain physicians operate upon her, this had not been done, and none of the numerous doctors which he said he had consulted in Tulsa, as well as in Wichita Falls, were called as witnesses to show that she even needed an operation. His wife did not appear ·as a witness upon that or any other issue. He had just been through the bankrupt court and had been denied a discharge as to appellee's debt because of his fraud in procuring the money. With appellee's judgment menacing him, having no funds whatever, and, as he says, with his credit destroyed, how could he have a bona fide intention of resuming business within any reasonable time? He does not attempt to inform us. Moreover, if it had been shown that he was possessed of sufficient funds to enable him to resume business at once, his 10-year lease of the bakery, coupled with the lessee's exclusive option to buy within that time, was a complete barrier, however sincere he may have been in his intention to re-occupy the property as a business home-

stead. Viewed in the light of these facts, his alleged intention is not even a reasonable expectation or anticipation of resuming business. It is simply a willingness to do so if he should ever become able and could get possession of the building. These are conditions which the exemption laws do not recognize. He was not using the property for business purposes at the time of the levy of the execution, because he was insolvent and had entered into the contract of lease and sale with Nefziger. The record shows that he came back after the levy of the execution and occupied the residence situated upon the lot under option given him in the contract to do so, and upon that point testified:

"As to what my purpose is, whether I am going back over temporarily or stay here permanently, I will state that I do not know. , I decided to come back to Wichita Falls all time as soon as my wife got through with her operation I come back. She was not through yet. I come back on account of this lawsuit; if not, I would have stayed there until through with operation. I got to come back and try to defeat it. She is real sick down there and should be operated. We saw Dr. Levine. My wife was in bed a little while—not much. I didn't go to Tulsa until September of last year. I carried my wife and children up there. I lived in light housekeeping rooms. The trouble with her, why everything got to be operated on her. Have had an examination since we come back here. We saw Dr. Macheckney, saw Dr. Lowery, and Dr. Pritchard. Might decide to go on to another town to operate on her. She is in bad shape. I come back on account of this lawsuit; if not, I would have stayed there until through with this operation. As to whether I brought my wife and children back then, I will state that she did not have to be in it. As to whether or not as soon as I levy execution on the property I immediately come back with my wife and children, I will state that I come back with my wife and children. Yeah, as to whether or not the main reason I come back to try to defeat this lawsuit, brought my wife and children back to defeat this lawsuit, I will state that I got to come back. They tried to take my home and take it away. I got to come back and try to defeat it. I got some money from my wife long time ago, and they got that property away and the property 502 Scott, with her money. I gave that rent to her to pay her back. She did not give me anything now; she gave me before money. That was loaned before I took bankruptcy. I testified in bankrupt court that I didn't owe her anything."

Stayton, Justice, said in Shryock v. Latimer, 57 Tex. 674:

"With the one as well as with the other, the use of the property in the calling or business of the claimant is essential to preserve the exemption after a sufficient designation has been made.

"At the time the property ·now in question was· sold, Latimer was not pursuing the business of a merchant, to which the house and lot were adapted and necessary, but it seems was clerking for other persons; and the fact that his business may have been that of a merchant

at a former period cannot affect the question, which is, 'What was his business at the time the sale was made?' Nor can the fact that he contemplated, if he ever became able to do so, to resume the business of a merchant, give to him that character, if it did not exist in fact.

"The law no more protects a man in a place to do business which he is not doing, and not making any immediate preparation to do, than it protects to a man a place for a home which is not in fact home, or in reference to which no steps have been taken to make it a home for the family. * * * That the failure to so use the property may result from financial embarrassment does not alter the rule, for the law does not exempt that which a man might like to use, but is unable to use for want of means; but it exempts that which he does use."

In Hull v. Naumberg, 1 Tex. Civ. App. 132, 20 S. W. 1125, the appellant was pursuing the business of a merchant in a two-story stone building located upon his business lot. In December, 1888, he became financially embarrassed and sold his stock of goods, leasing the lower story of the building to the purchaser of the stock for one year. In 1889, he leased a part of the store to another party and a portion to the postmaster for an indefinite period and leased the upper story to the Masonic Lodge for a term of five years. He then engaged in another occupation. He testified that he did not, by selling his merchandise, and renting the storehouse, intend to abandon the latter as a place of business, but expected to resume business as soon as he was able; that his ability was contingent upon his realizing upon certain notes and accounts due him and a remittance of $2,000 which his wife expected from her father's estate in Tennessee. The court said:

"When the defendant sold his stock of merchandise, he ceased altogether to follow that business. The property was not thereafter, in any sense, used by him as a place to follow the occupation or calling of the head of a family. The only specific business in which he thereafter engaged was that of a drayman, in connection with which the property was in no way used, and to which it was not adapted. We do not think that the mere intention to again resume business in this property, at an indefinite time in the future, dependent upon a contingency which might never happen, could retain and perpetuate in it the homestead character. Such an intention is immaterial."

To the same effect and under similar circumstances is the holding in Hill v. Hill, 85 Tex. 103, 19 S. W. 1016, and in Pfeiffer v. McNatt, 74 Tex. 640, 12 S. W. 821. In Bradley v. Janssen (Tex. Civ. App.) 93 S. W. 506, it is said:

"Had the homestead character of the property in question been abandoned by * * * Hurter before, and at the time of, its conveyance to appellant? We think so. He had ceased to pursue any business or calling as the head of a family to which the house and lot were adapted and had sought and obtained employment as an express messenger, a 'calling' to the successful prosecution of which said property was in no way necessary or proper. He had no means with which to carry on the business of a merchant, and no fixed purpose to again occupy the property at some definite time for the purposes of a home or place to exercise the calling or business of the head of a family. That he may have desired, or contemplated, resuming business in the storehouse, at some indefinite future time, if able to do so, is immaterial. Nor would the fact that Hurter reserved some part of the building as an office, in the absence of proof that said office was used by him in the prosecution of some avocation or calling, by which he sought to obtain a support for his family preserve the homestead character of the property."

Without quoting further, we cite to the same effect Alexander v. Lovitt, 95 Tex. 661, 69 S. W. 68; Houston v. Newsome, 82 Tex. 75, 17 S. W. 603; Harle v. Richards, 78 Tex. 80; 14 S. W. 257; Duncan v. Alexander, 83 Tex. 441, 18 S. W. 817.

As said above, Weitzman was an insolvent, who had been denied a discharge by the bankrupt court, upon the ground of his fraud. His credit was destroyed, his business homestead was in the possession of a third party, under a lease for ten years at the option of the lessee, which was also an executory contract of sale, with an option in the lessee to purchase, which might be exercised at any moment. While these conditions necessarily arouse sympathy for him, they render any intent he may say he had to resume business nothing more than a yearning or a willingness to do so. The property was not in a strict sense any longer his. There is not in the record the faintest glimmer to light his hope of repossessing it. His wish was father to a thought only, and it is not such an intent as the law respects, because intent contemplates a possibility of success. Notwithstanding the impressive and forcible argument with which his counsel has clothed appellant's desire, it cannot be dignified with the name of intent, and even if it could be so classed, still, as said in Hall v. Naumberg, supra, and Hill v. Hill, supra, "Such an intention was immaterial," and "An intention, under these circumstances, on his part, to make of it a place of business 'as soon as he got able'—an indefinite time in the future—is wholly immaterial."

[2, 3] Where the debtor temporarily leaves his home on account of the state of his health or that of some member of his family, it does not destroy the homestead character; but aside from the testimony of appellant himself, there is no evidence in the record that Mrs. Weitzman was ever ill. She had been operated upon at Wichita Falls several years before he left there, but no further operation was performed at Tulsa, though they had resided there about eight months. Since he was an interested party and had

not attempted to corroborate his evidence by producing his wife or some one of his numerous physicians, the court, who observed his manner and heard him testify, was not bound to accept any part of his evidence as true. Roe v. Davis (Tex. Civ. App.) 142 S. W. 950; Mills v. Mills (Tex. Com. App.) 228 S. W. 919; Wheeler v. Stone (Tex. Civ. App.) 261 S. W. 1082.

We are inclined to doubt the sufficiency of appellant's pleadings to show his right to a business homestead. He does not allege that he is a baker, and that the house was adapted and reasonably necessary to the pursuit of such business, and that he was then or intended within a reasonable time to use it, and it is questionable if, without these allegations, it is sufficient. Clem Lumber Co. v. Elliott Lumber Co. (Tex. Com. App.) 254 S. W. 935.

[4] The appellant's prayer is for an injunction "and for such other and further relief, special and general, in law and in equity that he may be justly entitled to." The appellee's prayer is that "the injunction be in all things denied." It is insisted that under these prayers the court was not warranted in setting apart the residence as exempt and in denying the injunction as to the sale of the business property In equity cases a prayer for general relief is as broad as the equity powers of the court, and the prayer does not control a chancellor in determining what relief shall be given. He grants just such relief as is consistent with the issues raised by the pleading and supported by the evidence. Swope v. Missouri Trust Co., 26 Tex. Civ. App. 133, 62 S. W. 947; Coutlett v. Mortgage Co. (Tex. Civ. App.) 60 S. W. 817; Kempner v. Ivory (Tex. Civ. App.) 29 S. W. 538.

We find no reversible error, and the judgment is affirmed.

BOYCE, J., not sitting.

On Motion for Rehearing.

HALL, C. J. [5, 6] In the original opinion some doubt is expressed as to the sufficiency of the appellants' plea, setting up the business homestead exemption. Appellee has called our attention specifically to the facts as alleged, which, as against a general demurrer, we think are sufficient; but if it be admitted that appellants' allegations are insufficient, it does not present fundamental error, requiring us to reverse the judgment in order that he may perfect his pleading. No one was surprised or misled thereby, and, as said by the Supreme Court, in Blum v. Whitworth, 66 Tex. 350, 1 S. W. 108:

"No mere omission in pleading, which did not mislead the adverse party, will be regarded on appeal, but the case will be decided on that theory upon which both parties have proceeded in the appellate court."

Where the trial court and the parties have placed a certain construction upon a pleading in any degree susceptible of such construction and the case has been tried upon a theory so understood and acquiesced in, it is too late for the pleader to raise the question of the sufficiency of his own allegations by motion for rehearing in this court; the general rule being that a pleader cannot attack his own pleadings on appeal. Moreover, by his conduct throughout the trial, appellant invited the error, if any, in trying the issue of business homestead, and is precluded from insisting upon it here. The following cases have settled these principles: Panhandle Grain & Elevator Co. v. Dowlin (Tex. Civ. App.) 247 S. W. 873; Kistler v. Latham (Tex. Com. App.) 255 S. W. 983; Lemm v. Miller (Tex. Civ. App.) 245 S. W. 90; Southern Pacific Railway Company v. Kennedy, 9 Tex. Civ. App. 232, 29 S. W. 394; Kuhn v. Shaw (Tex. Civ. App.) 223 S. W. 343; Delaware Underwriters v. Brock, 109 Tex. 425, 211 S. W. 779; Elcan v. Childress, 40 Tex. Civ. App. 193, 89 S. W. 84; Gutheridge v. Gutheridge (Tex. Civ. App.) 161 S. W. 892; Boone v. Clark (Tex. Civ. App.) 214 S. W. 607; Gladys City Oil Co. v. Right of Way Oil Co. (Tex. Civ. App.) 137 S. W. 171; Id., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; T. & N. O. Ry. Co. v. Geiger, 55 Tex. Civ. App. 1, 118 S. W. 179; Lumsden v. Jones (Tex. Civ. App.) 205 S. W. 375; Downs v. Stevenson, 56 Tex. Civ. App. 211, 119 S. W. 315.

[7, 8] The appellant seeks to enjoin the sale of property which prima facie is subject to execution. He had discontinued business and was no longer using it as his bakery (Willis & Bro. v. Pounds, 6 Tex. Civ. App. 512, 25 S. W. 715; Taylor v. Ferguson, 87 Tex. 1, 26 S. W. 46; Tackaberry v. City National Bank, 85 Tex. 488, 22 S. W. 151, 299); he was totally insolvent and without credit (Malone v. Kornrumpf, 84 Tex. 454, 19 S. W. 607); the terms of his lease precluded the possibility of his assuming business within the near future and prima facie negatived a bona fide intention of doing so at any definite time in the future (Hill v. Hill, 85 Tex. 103, 19 S. W. 1016; Alexander v. Lovitt, 95 Tex. 661, 69 S. W. 68; Cooper Grocery Co. v. Peter, 35 Tex. Civ. App. 49, 80 S. W. 108); with his family he had gone to Oklahoma (Reece v. Renfro, 68 Tex. 192, 4 S. W. 545; McElroy v. McGoffin, 68 Tex. 208, 4 S. W. 547; Harrington v. Mayo, 61 Tex. Civ. App. 610, 130 S. W. 650); and his tenant was in possession under a ten-year lease, which also conferred upon the tenant the exclusive option of purchasing the property at any time for an agreed price. In seeking to prevent the sale, he is the aggressor and holds the laboring oar, at least to the extent of establishing the fact that the property is his business homestead which he had not and could not repossess because of the lease after the writ was

levied. Because of the lease he could not occupy the bakery as a business homestead and was not doing so. By his application for injunction he assumed the burden of showing that it was exempt from forced sale. By his pleadings, as well as by his evidence, he must bring the property within the pale of the constitutional inhibition. He is seeking affirmative relief, and the court, in granting it, is limited by the facts which he sets out. In other words, he must claim it as a business homestead before the court can give it to him. No duty to claim it in his behalf rested upon the court, and surely the defendant could not be expected to do so. If he could have asserted a homestead claim and did not, the court will not give him one nolens volens. A failure to assert his claim in his pleadings is a waiver of it. Moore v. Moore, 89 Tex. 29, 33 S. W. 217; Harris v. Matthews, 36 Tex. Civ. App. 424, 81 S. W. 1198; Fitzhugh v. Connor, 32 Tex. Civ. App. 277, 74 S. W. 83; Sweet v. Lyon, 39 Tex. Civ. App. 450, 88 S. W. 384; Nichols v. Dibrell, 61 Tex. 539; Ellis v. Harrison, 24 Tex. Civ. App. 13, 56 S. W. 592, 57 S. W. 984.

[9] Abandonment of the homestead could be shown by appellee under a general denial. Burcham v. Gann, 1 Posey, Unrep. Cas. 333. The question of abandonment was one of fact, and the evidence is sufficient to show abandonment of the homestead unless appellant left the state on account of his wife's health. Although he testified that he went to Tulsa on account of his wife's health, as stated in the original opinion, the court was not bound to believe that part of his testimony. The evidence shows that she was in Wichita Falls at the time of the trial, and yet she was not produced as a witness; neither did appellant bring any of his multitude of doctors to corroborate him. The appellee was not required to put either Mrs. Weitzman or any of the physicians upon the stand, and no presumption arises against him for his failure to do so. Weitzman had been discredited by proof that he had testified falsely in a vain effort to be discharged in bankruptcy.

While we must commend appellant's attorneys for their energy and ability in marshaling such a formidable array of decisions in support of the contentions in their motion, their law does not fit the facts.

In his original and two supplemental motions, appellant seems to ignore the difference between his business and residence homesteads. They were separate buildings, and the appellant had segregated one from the other by the plank walk and cement driveway, as well as by a designated front yard. As shown by the maps, the parties recognized the fact of such separation throughout the trial, and the court respected it in rendering judgment.

[10] In our opinion the judgment does not create an easement, but simply recognizes and preserves one already created by the appellant himself. The cement driveway from the alley to the loading shed in the rear of the bakery was neither a part of the residence homestead nor necessary to its use and enjoyment. Appellant had, by user, dedicated it as auxiliary to the bakery. The judgment preserves the front yard and sets it apart to the use of the occupant of the dwelling and enjoins its sale, together with the plank walk around two sides of the bakery to the front street. There being an obvious and permanent servitude imposed by appellant upon the estate in the establishment of such easements, the court properly respected them in his judgment. Miles v. Bodenheim (Tex. Civ. App.) 193 S. W. 693; Leathers v. Craig (Tex. Civ. App.) 228 S. W. 995; Howell v. Estes, 71 Tex. 690, 12 S. W. 62.

The rehearing is denied.

---

&#11013;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes